**In re the Marriage of Andrew W. SIMMONS, Petitioner, Respondent,**

**v.**

**JoEllen C. SIMMONS, n/k/a JoEllen C. Vasicheck, Appellant.**

**No. C2–91–2313.**

Court of Appeals of Minnesota.

June 2, 1992.

John D. Jeffrey, Jr., East Grand Forks, for respondent.

Thomas John Kuchera, Kuchera & Stenehjem, Grand Forks, N.D., for appellant.

Considered and decided by KLAPHAKE, P.J., and HARTEN and FOLEY,* JJ.

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn.Const. art. VI,

## OPINION

HARTEN, Judge.

Appellant JoEllen C. Simmons, now known as JoEllen C. Vasicheck, appeals the trial court's order granting her former husband, respondent Andrew W. Simmons, structured visitation with her son from a previous relationship. Although the parties' stipulation granting Simmons reasonable visitation with the child was incorporated into the judgment, Vasicheck argues that the trial court erred in ordering visitation over her objection. We disagree and affirm.

## FACTS

The parties were married on May 22, 1989. Vasicheck had a five-year-old son, M.V., at the time of the marriage. M.V.'s biological father has had no contact with him and has surrendered his parental rights. There is one child of the parties' marriage, a son, A.S., born September 14, 1989.

M.V. lived with the parties until they separated in January 1991. During the separation Simmons had contact with both children on a regular basis. In his dissolution petition, Simmons sought visitation with M.V., indicating that he and M.V. had a father-son relationship.

On February 22, 1991, the parties signed a stipulation settling all matters at issue between them. The parties were represented by separate counsel. They agreed to joint physical and legal custody of their son, A.S. They also agreed that Simmons was "entitled to the right of reasonable visitation" with M.V. The stipulation included a notice provision pertaining to the parties' rights to have access to the minor child's records, to attend school conferences, to be informed of accident or serious illness, and to reasonable telephone contact. Minn.Stat. § 518.17, subd. 3(b) (1990). A judgment incorporating the stipulation was entered on March 22, 1991.

§ 2.

After the judgment was entered, Vasicheck refused to allow Simmons any visitation with M.V. In September 1991, Simmons moved for structured visitation rights and other relief. In her response, Vasicheck indicated that although she originally had agreed to visitation between Simmons and M.V. because she "felt it would be good" for M.V., as it turned out, M.V. did not want to visit Simmons and his behavior had improved since his contact with Simmons ceased. Vasicheck moved for termination of Simmons' right to visit M.V.

After a hearing where both parties testified, the trial court granted Simmons' motion, finding that Simmons was in loco parentis with M.V. throughout the 18–month period they lived together, that Simmons and M.V. had established a close relationship, and that regular visitation with Simmons was in M.V.'s best interests. The court granted Simmons visitation with M.V. every other weekend and on certain holidays, coinciding with the times when Simmons has physical custody of A.S. The trial court's order further provided that Simmons has the rights specified in section 518.17, subdivision 3(b) with regard to both children. Finally, the court awarded Simmons $250 in attorney fees. This appeal followed.

## ISSUES

1. Did the trial court err in enforcing the provision of the stipulated judgment granting Simmons the right to visitation with his former stepson?

2. Did the trial court have authority to award Simmons the rights specified in section 518.17, subdivision 3(b) with regard to his former stepson?

3. Did the trial court abuse its discretion in awarding attorney fees to Simmons?

## ANALYSIS

1. *Stepparent Visitation*

■ The authority of the trial court to award and enforce visitation rights to a former stepparent involves questions of law. This court is not bound by the trial court's ultimate legal conclusions. *See*

*Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977).

■ Vasicheck argues that Simmons' right, if any, to seek visitation with M.V. is limited to Minn.Stat. § 257.022 (1990). This statute is entitled "Rights of Visitation to Unmarried Persons." Subdivision 2b of the statute provides:

**When child has resided with other person.** *If an unmarried minor has resided in a household with a person, other than a foster parent, for two years or more* and no longer resides with the person, the person may petition the district court for an order granting the person reasonable visitation rights to the child during the child's minority. The court shall grant the petition if its finds that:

(1) visitation rights would be in the best interests of the child;

(2) the petitioner and child had established emotional ties creating a parent and child relationship; and

(3) visitation rights would not interfere with the relationship between the custodial parent and the child.

The court shall consider the reasonable preference of the child, if the court considers the child to be of sufficient age to express a preference.

(Emphasis added).

Since Simmons and M.V. resided together in the same house for only 18 months, the two-year requirement under section 257.022, subdivision 2b is not met. Vasicheck contends that because Simmons is ineligible for visitation under the statute, the trial court lacked authority to grant visitation rights in the judgment. We disagree for two reasons: (1) section 257.022, subdivision 2b does not preclude a former stepparent who was in loco parentis to the child from asserting a common-law right to visitation, and (2) Vasicheck stipulated to the visitation.

Although the question of whether a former stepparent may assert a common-law right to visitation is one of first impression in Minnesota, our supreme court has recognized the common-law doctrine of in loco parentis. *See London Guar. & Accident*

*Co. v. Smith,* 242 Minn. 211, 217, 64 N.W.2d 781, 785 (1954) (unemancipated minor is barred from maintaining an ordinary negligence action against a stepparent who stands in loco parentis).

Other jurisdictions have held that a former stepparent who was in loco parentis to the child during the marriage may be entitled to visitation over the natural parent's objection, if the trial court determines that visitation is in the child's best interest. *See, e.g., Hickenbottom v. Hickenbottom,* 239 Neb. 579, 477 N.W.2d 8, 17 (1991) (former stepparent pursuing visitation with the former stepchild must establish that during the marriage, he or she acted as a parent to the child); *Carter v. Brodrick,* 644 P.2d 850, 855 (Alaska 1982) ("where a stepparent has assumed the status of in loco parentis, a stepchild is a child of the marriage" within the meaning of the custody statute); *Gribble v. Gribble,* 583 P.2d 64, 66–67 (Utah 1978) (if the former stepparent was in loco parentis to the child during the marriage, he or she is entitled to visitation if the trial court determines it is in the child's best interest). *But see Shoemaker v. Shoemaker,* 563 So.2d 1032, 1034 (Ala. Civ.App.1990) (former stepparent has no common-law right to visitation privileges with the former stepchild, and parties' agreement did not operate to create such a right).

In view of our supreme court's recognition of the in loco parentis doctrine, we hold that a former stepparent who was in loco parentis with the former stepchild may be entitled to visitation under the common law. Because section 257.022 does not contain any clause specifically repealing, restricting, or abridging a non-parent's common-law visitation rights, we construe the statute to extend and supplement the common-law rule.[1] *Agassiz & Odessa Mut. Fire Ins. Co. v. Magnusson,* 272 Minn. 156, 166, 136 N.W.2d 861, 868 (1965) ("ordinarily statutes are presumed not to alter or modify the common law unless they expressly so provide"). Our prior decisions interpreting section 257.022 do not indicate that the statute precludes a nonparent from asserting common-law visitation rights, if any. *See Kulla v. McNulty,* 472 N.W.2d 175, 182 (Minn.App.1991) (natural parent's former lover's only right to visitation must come from section 257.022, subdivision 2b, since she had no common-law right to visitation), *pet. for rev. denied* (Minn. Aug. 29, 1991); *In re R.A.N.,* 435 N.W.2d 71, 73 (Minn.App.1989) (grandparents, who did not meet requirements of section 257.022, could not claim a common-law derivative right to visitation through their son, whose parental rights had been terminated).

"Whether a stepparent stands in loco parentis to a minor child is primarily a question of intent to be determined in light of the circumstances * * * [of] each case." *London Guar. & Accident Co.,* 242 Minn. at 217, 64 N.W.2d at 785. Here, Simmons' testimony concerning his caretaking of M.V. during the marriage and the close relationship with the child is sufficient to support the trial court's determination that Simmons was in loco parentis to M.V. Because such a relationship existed, the trial court had authority to award visitation, even though Simmons did not meet the requirements of Minn.Stat. § 257.022, subd. 2b.

Moreover, the parties' stipulation granting Simmons visitation with M.V., approved by the trial court and incorporated into the judgment, created an enforceable right. "The parties to a dissolution * * * may impose obligations beyond the authority of the family court." *Angelos v. Angelos,* 372 N.W.2d 405, 408 (Minn.App.1985) (citing *Smith v. Smith,* 312 Minn. 541, 546, 253 N.W.2d 143, 146 (1977)), *pet. for rev. denied* (Minn. Oct. 24, 1985). We recognize, however, that the welfare of the child

---

1. 1989 Minn.Laws ch. 248, § 1, is codified at Minn.Stat. § 257.022, subd. 2b (1990). The sparse legislative history indicates that the sponsors of the original bill were unaware that an in loco parentis former stepparent has standing to seek visitation under the common law. *See* April 5, 1989 hearing of the Civil Law Division of the Senate Judiciary Committee on Senate File # 573 (statement of Sen. Allan Spear). If the legislature desires that section 257.022 should preempt any common-law visitation rights, the statute must be amended to so indicate.

takes precedence even if the case involves a stipulation. *Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn.1986) (citing *Petersen v. Peterson,* 296 Minn. 147, 148, 206 N.W.2d 658, 659 (1973)). Here, we find that the trial court did not err in determining that enforcement of the stipulated visitation rights is in M.V.'s best interests.

■ The trial court has broad discretion to determine the child's best interests in the area of visitation. *Rutten v. Rutten,* 347 N.W.2d 47, 51 (Minn.1984). Vasicheck raised various concerns regarding Simmons' conduct during the marriage, but conceded that Simmons has competently parented A.S. and she has seen no adverse effect on A.S. as a result of the shared custody. The court discounted Vasicheck's testimony that M.V. does not want to visit Simmons, noting that the event that triggered Vasicheck's denial of visitation was the finalization of the dissolution. We defer to the trial court's assessment of credibility. *See* Minn.R.Civ.P. 52.01.

We conclude that Simmons has an enforceable right to visitation with M.V. The trial court did not abuse its broad discretion in finding that visitation between Simmons and M.V. is in M.V.'s best interests, and in ordering structured visitation.

### 2. *Minn.Stat. § 518.17, subd. 3(b) Rights*

■ By statute, "every custody order" must include a notice to the parties specifying that each party has a right of access to the child's records, to attend school conferences, to be notified of a child's accident or illness, and to reasonable access and telephone contact with the child. Minn.Stat. § 518.17, subd. 3(b). In this case, we agree with Vasicheck that the trial court lacked authority to award Simmons these rights with respect to his former stepson.

The limited nature of Simmons' right to visitation with M.V. does not include access to M.V.'s confidential records or the other rights specified in section 518.17, subd. 3(b). These rights clearly apply only to the child's parents or a nonparent custodian. Moreover, although the section 518.17, subdivision 3(b) notice in the judgment refers

to "the minor children," the parties' stipulation reflects that the notice pertains to the "minor child." Vasicheck did not confer the section 518.17, subdivision 3(b) rights concerning M.V. upon Simmons by stipulation.

Because Simmons has only the right to visitation with M.V. and Vasicheck did not agree to any additional rights, the portion of the trial court's order granting Simmons the section 518.17, subdivision 3(b) rights with respect to M.V. must be vacated.

### 3. *Attorney Fees*

■ Vasicheck challenges the trial court's award of $250 attorney fees to Simmons. The trial court has broad discretion in the award of attorney fees and an award will not be disturbed unless there is a clear abuse of discretion. *Kroening v. Kroening,* 390 N.W.2d 851, 854 (Minn.App.1986).

■ The trial court did not make specific findings in support of the award on the basis of either financial need or the impact that Vasicheck's behavior may have had on the cost of litigation. *See* Minn.Stat. § 518.14 (1990). However, the original judgment incorporated the parties' stipulation that the nonmoving party agreed to pay attorney fees and costs associated with a successful motion to enforce any part of the agreement. In view of the parties' stipulation, and the trial court's broad discretion, we do not find the modest award of fees to be an abuse of discretion.

Simmons requests an award of attorney fees on appeal. The parties' stipulation does not control this court's discretion to award fees. We do not find that an award of attorney fees on appeal is warranted.

### DECISION

In view of Simmons' in loco parentis relationship to his former stepson during the marriage and the incorporation into the judgment of the parties' stipulation granting visitation rights, Simmons has an enforceable right to visitation, even though he is ineligible to petition for visitation under Minn.Stat. § 257.022, subd. 2b. The trial court acted within its broad discretion

in finding that Simmons' visitation with M.V. was in M.V.'s best interest and in granting structured visitation. The trial court lacked authority, however, to award Simmons the rights under section 518.17, subdivision 3(b) with respect to his former stepson, and that portion of the trial court's order is vacated. The trial court's award of attorney fees to Simmons was not an abuse of discretion. Simmons' request for attorney fees on appeal is denied.

Affirmed as modified.