Karen GRAY, Petitioner, Respondent,

v.

Jayson HAUSCHILDT, Appellant.

No. C4-94-1968.

Court of Appeals of Minnesota.

March 7, 1995.

Thomas E. Gorman, Gorman & Gorman, Ltd., Red Wing, for appellant.

Charles O. Richardson, Red Wing, for respondent.

Considered and decided by RANDALL, P.J., and CRIPPEN and EDWARD D. MULALLY,[1] JJ.

## OPINION

RANDALL, Judge.

Karen Gary moved for visitation with her two granddaughters. Jayson Hauschildt, the children's father, opposed the motion. After a hearing, the district court granted Gary visitation. Hauschildt appeals.

## FACTS

Jayson Hauschildt and Mary Helen Swope were married in August, 1990. They had two daughters, C.M.S., (d.o.b. June 2, 1990), and A.L.H., (d.o.b. April 11, 1991). Hauschildt and Swope divorced in March 1992. Swope was granted custody of the children. Swope was killed in a car accident in September 1992. Hauschildt has had custody of his children since the accident. He and they live in Red Wing, Minnesota.

Swope's mother, Karen Gary, sought court-ordered visitation with the children. Gary lives in nearby Lakeville. Gary alleges that Hauschildt made visitation impossible. She sought one overnight visitation per month with the children in her home. Hauschildt was opposed to overnight visitation in Lakeville and wanted to limit Gary's visitation to Red Wing. Gary argues that Hauschildt even hindered visitation in Red Wing by cancelling visitation, or by claiming that he got the dates mixed up.

At the hearing, Hauschildt presented evidence that Gary is an alcoholic, had used illegal drugs, and had been in abusive relationships in the past. He claimed some of the abuse occurred in front of Gary's children and grandchildren. Hauschildt also presented evidence that Donald Hartley, who now lives with Gary, was convicted of alcohol related driving offenses. Hauschildt did not allege that Hartley ever abused Gary. Rather, Hauschildt argued that Gary's former husbands or former boyfriends committed the abuse.

Gary presented evidence that she has successfully completed chemical dependency treatment and has remained sober since December 1992. She is a member of Alcoholics Anonymous (AA). Gary also underwent treatment regarding her abuse. Hartley underwent treatment for alcohol abuse, and attends AA meetings. He stated that he had maintained his sobriety during the 16 months before the hearing.

Sharon Miller, Gary's case manager at Fairview Ridges Hospital testified that Gary made significant improvements during her treatment. Miller testified her opinion was that Gary would not drink alcohol. Miller also testified that based on her observations, her opinion was that Gary would be loving to the children and not hurtful, and would be able to give valuable lessons to the children.

Lyn Elg, the county custody and visitation investigator, testified that Gary could have appropriate overnight visitation at her home. According to Elg, visitation could occur safely. Elg also gave her opinion that overnight visitation in Lakeville would be in the children's best interests.

In preparing her report for the county, Elg met with Gary and Hartley at their home in Lakeville. Elg talked with Gary's references, Gary's psychologist and psychotherapist, Sharon Miller, and members of the Red Wing Sheriff's Department. Elg also observed Gary with the children and testified that the children appeared comfortable around Gary. Elg stated that Gary's home was well taken care of and would be appro-

1. Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

priate for overnight visitation. Elg discussed issues of changing diapers and having the children in safety seats while driving, and was satisfied that these issues were resolved.

Hauschildt called Dr. Judith Atlee to testify. Dr. Atlee did not review Gary's medical records or examine Gary personally. When asked a hypothetical question including chemical dependency issues, however, Dr. Atlee opined that she would be concerned about a potential lack of structure. Dr. Atlee would limit visitation, not allowing overnight visitation due to this potential lack of structure.

In granting Gary overnight visitation, the district court determined that Gary could safely have overnight visitation, that visitation would be in the children's best interests, and that visitation would not interfere with the parent child relationship. Hauschildt appeals.

## ISSUE

Did the district court err in allowing grandparent visitation rights under Minn. Stat. 257.022, subd. 1 (1992)?

## ANALYSIS

██ The determination and enforcement of visitation rights are questions of law. *Simmons v. Simmons,* 486 N.W.2d 788, 790 (Minn.App.1992). This court need not defer to the district court's legal conclusions regarding visitation. *Id.* Other questions relating to visitation, however, are within the broad discretion of the district courts. *Manthei v. Manthei,* 268 N.W.2d 45, 45 (Minn. 1978). This court's review of the latter issues is limited to determining whether the district court abused its discretion in making findings unsupported by the evidence or by improperly applying the law. *Courey v. Courey,* 524 N.W.2d 469, 471–72 (Minn.App. 1994).

The district court based its decision on Minn.Stat. 257.022, subd. 1 (1992). That section provides:

> If a parent of an unmarried minor child is deceased, the parents and grandparents of the deceased parent may be granted reasonable visitation rights to the unmarried

minor child during minority by the district or county court upon finding that visitation rights would be in the best interests of the child and would not interfere with the parent child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

Mary Helen Swope is deceased. Karen Gary is the parent of Mary Helen Swope. C.M.S. and A.L.H. are the unmarried minor children of Mary Helen Swope. By its terms Minn. Stat. § 257.022, subd. 1 applies to this situation and the district court may grant Gary visitation rights if it makes the required findings and considers the required factors. "A statute whose meaning is plain must be given effect without further scrutiny." *In re Hutchinson,* 440 N.W.2d 171, 176 (Minn.App. 1989), *pet. for rev. denied* (Minn. Aug. 9, 1989), *quoted in Kulla v. McNulty,* 472 N.W.2d 175, 181 (Minn.App.1991) (holding statute did not apply where statutory elements not met by facts of case), *pet. for rev. denied* (Minn. Aug. 29, 1991).

By its terms, the statute requires the district court to determine whether visitation with the parent or grandparent would be in the best interests of the child and would not interfere with the parent child relationship. The district court is also required to consider the amount of personal contact between the parent or grandparent of the deceased parent and the child.

██ The trial court made the required findings that visitation with Gary would be in the best interests of the children, and that visitation would not interfere with the parent child relationship. The trial court also considered the amount of time Gary and the children spent together prior to Gary's petition. The trial court's findings are fully supported by the evidence in the record and the trial court properly exercised its discretion.

Hauschildt argues that visitation with Gary would not be in the children's best interests and that visitation would interfere with the parent child relationship. He argues in his brief that, "Ms. Gary is in essence trying to undermine Jayson's relationship with the

children by her pattern of lifestyle different from appellant's 'safe environment' he is establishing for his children." The trial court disagreed with Hauschildt and we affirm the trial court.

The trial court found that Gary could safely have visitation with her granddaughters. Gary has a house that is suitable and appropriate for overnight visitation. The record shows extensive evidence that Gary is maintaining her sobriety. According to the county's visitation investigator, alcohol does not appear to be a problem with Gary at this time. Hartley's past problems with alcohol also appear to be resolved.

In the event that either Gary or Hartley would have a relapse, the district court specifically provided a mechanism whereby the county has the discretion to terminate visitation. The county would then be required to notify the court of the termination, and the court would review the county's decision. The trial court also provided that the county would monitor visitation and provide assistance as requested by either party.

The trial court specifically concluded that visitation with Gary would not interfere with the relationship between the children and Hauschildt. The amount of visitation is not great, two days per month with one overnight visit. Hauschildt attempted to argue that somehow Gary might interfere with his relationship with his children. To the contrary, Gary's attorney elicited responses from Hauschildt on cross-examination that in a prior deposition Hauschildt had stated there were no significant problems with visitation. Hauschildt also stated in the deposition that the children did not have behavioral problems after visitation. The deposition testimony supports the trial court's finding that visitation would not interfere with the parent child relationship.

Finally, in making its decision, the trial court considered the amount of time Gary and the children spent together prior to Gary's petition. Gary has played an important role in the children's lives since they were born. The trial court found that Gary shared in raising the children, and that a bond developed between them.

## DECISION

The trial court made the required findings and considered the required factors under Minn.Stat. § 257.022, subd. 1 (1992). The district court did not abuse its discretion in finding that visitation with the children's maternal grandmother would be in their best interests and would not interfere with the parent child relationship. The court appropriately considered the amount of personal contact between the children and their maternal grandmother.

**Affirmed.**