*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1063**

Joyce Elaine Hansen, petitioner,
Appellant,

vs.

Jeffrey Ray Hanson,
Respondent,

Joni Michelle Herdrich,
Respondent.

**Filed July 13, 2015
Reversed and remanded
Kirk, Judge**

Dakota County District Court
File No. 19AV-FA-13-2663

Christopher M. Banas, Banas Family Law, P.A., Lilydale, Minnesota (for appellant)

Matthew T. Majeski, Majeski Law, LLC, Woodbury, Minnesota (for respondent Jeffrey Ray Hanson)

Joni Michelle Herdrich, Little Canada, Minnesota (pro se respondent)

Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant-grandmother Joyce Elaine Hansen challenges the district court's denial of her petition for visitation with her two minor grandchildren, arguing that visitation is in the children's best interests and would not interfere with father's relationship with the children. Because grandmother met her burden of proof showing these two factors under Minn. Stat. § 257C.08, subd. 3 (2014), the district court abused its discretion in not granting her visitation, and we reverse and remand to the district court.

## FACTS

Respondent-father Jeffrey Ray Hanson and respondent-mother Joni Michelle Herdrich, who never married, are the biological parents of the minor children N.G.H. and T.R.H.[1] After the state removed the children from mother's care, father assumed parenting duties and moved into grandmother's home with N.G.H. in May 2009, followed by T.R.H. in October. During this period, father was granted sole legal and sole physical custody of the two small children. Prior to moving in with grandmother, father testified in a deposition that he spent time in jail and was living "on the street, house to house."

For over three years, grandmother helped raise the children while father got his life back on track and secured employment. Grandmother shared in the daily parenting responsibilities, paid for most of the child-related household expenses, secured health and

---

[1] Herdrich, who is a named party to this appeal, did not participate in the district-court proceedings.

dental insurance for the children, took the children to athletic activities, and took the children to doctor's appointments (including psychological services).

In 2010, father began a relationship with Vicky Dahlberg, T.R.H.'s daycare provider, who lived across the street from grandmother's residence. Around October 2012, father and the children had transitioned to living full time at Dahlberg's residence. After this time, the children continued to spend significant amounts of time with grandmother.

On August 28, 2013, grandmother filed a petition requesting that the district court award her reasonable and liberal visitation with the children. In October, the parties voluntarily entered into mediation, and stipulated to a temporary visitation schedule where the children would visit grandmother overnight once per month and after school to 5:00 p.m. once a week. The parties also agreed to go to counseling to improve their communication and boundary-setting skills.

On February 26, 2014, the district court held an evidentiary hearing on grandmother's petition where the parties and other witnesses testified. Both parties were represented by counsel. The district court accepted exhibits submitted by father, which included documents and emails from N.G.H.'s teachers regarding his behavior at school, and email correspondence between the parties. Grandmother submitted into the record an exhibit of a proposed visitation schedule and a copy of father's deposition taken on September 30, 2013. Grandmother's proposed visitation schedule was more expansive than the October 2013 temporary visitation schedule, as she requested visitation time including every other full weekend and a weeknight, two weeknights every other

3

alternating week, two non-consecutive weeks during summer vacation, and alternating holidays.

In April, the district court issued an order denying grandmother's petition and vacating the October 2013 temporary order, concluding that court-ordered visitation was not in the best interests of the children and it would interfere with father's relationship with the children. Focusing on grandmother's conduct, the district court pointed out that grandmother had undermined father's relationship with the children by refusing to discipline the children "in any way" and by telling them that they didn't have to listen to father or Dahlberg, and that N.G.H.'s behavior at school had worsened after visiting grandmother. The district court granted father complete discretion in determining how much, if any, visitation occurred between grandmother and the children.

Grandmother appeals.

### DECISION

A district court has broad discretion in determining custody matters. *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002). "Appellate review of custody determinations is limited to whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Id.* A grandparent of a minor child may petition for visitation rights if the child resided with the grandparent for at least one year and was subsequently removed from the home by the minor's parents. Minn. Stat. § 257C.08, subd. 3. The district court "shall" grant the grandparent's petition if it finds by clear and convincing evidence that visitation rights would be in the best interests of the child and would not interfere with the parent-child

4

relationship. *Id.*; *see SooHoo v. Johnson*, 731 N.W.2d 815, 823 (Minn. 2007). We defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

Grandmother argues that the district court clearly erred in finding that she undermined father's relationship with his children. To the contrary, grandmother points out that the record demonstrates that she fostered a healthy relationship between father and the children. After a careful review of the record, we are persuaded by grandmother's argument.

The district court's findings that visitation would interfere with the parent-child relationship are not supported by the record. Father alleged that grandmother made repeated derogatory statements about Dahlberg. But there is no other evidence in the record supporting this allegation. Father testified at the deposition that he did not know for a fact that grandmother made the alleged statements and that it was possible that the children were simply voicing their opinions about the current situation. Grandmother denied making the statements. At the time of the hearing, N.G.H. and T.R.H. were eight years old and six years old, respectively, and were not questioned by the district court about these statements, which was appropriate given their young ages.

When determining whether visitation would interfere with the relationship between the children and parent, relevant factors have included the suitability of the grandparent's house for visitation, the quality of previous visitation, whether the children experienced behavioral problems after visitation, and the amount of proposed visitation time. *See Gray v. Hauschildt*, 528 N.W.2d 271, 273-74 (Minn. App. 1995).

5

Here, grandmother was instrumental in providing a stable, secure environment for father to parent and reside with his children in her home when he was granted full custody after they were placed in foster care. She acted as the primary caretaker for two children in their formative years. There is no evidence in the record that grandmother's house is inappropriate for visitation, and father admitted that the weekly visitations between October 2012 and May 2013 were working "generally well." Evidence concerning the children's behavioral problems after visitation was at best weak; father testified that the children were "anxious" after an overnight visit with grandmother, but he admitted that it was possible that the children's behavior could be attributed to other factors unrelated to the visitation. There is no evidence that T.R.H. experienced any difficulties at school related to the visits, and N.G.H.'s school records do not demonstrate a clear link between the visits and his behavior at school. Rather, the record clearly establishes that N.G.H.'s behavioral problems predate his court-ordered visits with grandmother. With this said, we recognize that grandmother's proposed visitation schedule is significantly greater than other grandparent-visitation cases. For example, in *Rohmiller v. Hart*, we affirmed a district court's determination that visitation of one weekend each month was appropriate. 799 N.W.2d 612, 615 (Minn. App. 2011), *aff'd*, 811 N.W.2d 585 (Minn. 2012).

Turning to the best-interests factors, "[o]ne of the strongest justifications for grandparent visitation is to encourage the continuation of lasting bonds and a sense of security for children." *In re Santoro*, 594 N.W.2d 174, 178 (Minn. 1999). Grandmother argues that court-ordered visitation is in the best interests of the children. After

6

reviewing the record, we are unable to determine if the district court focused on the children's best interests. The district court implicitly credited father's testimony that visitation was not in the best interests of the children, but disregarded his testimony that the children love their grandmother, that she is, for all intents and purposes, a good grandmother, and that the children would benefit from seeing her. Given the children's relatively young ages, it is understandable why the district court did not make findings regarding N.G.H.'s and T.R.H.'s preferences regarding visitation. *See id.* at 178. But the district court did not credit father's testimony that the children expressed to him that they enjoyed spending time with their grandmother.

The record also does not support the district court's conclusion that grandmother failed to discipline the children "in any way" while they were in her care. A review of the record demonstrates neither party was an effective disciplinarian, and they did not agree on how to discipline the children, especially with regard to N.G.H.'s behavioral issues. Grandmother testified that she implemented time-outs and calming techniques when disciplining N.G.H. Traditionally, parents, not grandparents, are the primary disciplinarians of their children, and the question of whether a grandmother can spend time with her grandchildren should not turn on her ability to discipline the children during a visit.

By all accounts, grandmother has played an important role in the children's lives since they were very young. We conclude on the record before us that the district court erred in failing to recognize that it is in the best interests of the children to preserve the bond that they have developed with their grandmother. On this record, grandmother met

7

her burden of demonstrating by clear and convincing evidence that court-ordered visitation would not interfere with father's parent-child relationship and that visitation was in the best interests of the children. *See* Minn. Stat. § 257C.08, subd. 3. We reverse the denial of visitation and remand to the district court with instructions to issue an order granting grandmother a reasonable amount of visitation time with the children, within the court's discretion. We also remind the parties that "specific terms of judicially ordered visitation are no substitute for flexibility and cooperative arrangements in the child's best interests." *In re C.D.G.D.*, 800 N.W.2d 652, 663 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011).

**Reversed and remanded.**