CLIFFORD A. SANDY v. WALTER BUTLER SHIPBUILDERS, INC.[1]

February 1, 1946.

No. 34,126.

[1]Reported in 21 N. W. (2d) 612.

216.

*Abbott, MacPherran, Dancer & Montague* and *P. J. Lyons,* for appellant.

*Arthur R. Smythe,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order overruling its demurrer to plaintiff's complaint. The court having certified the question presented to be important and doubtful, the cause is properly here.

These, in substance, are the facts recited in the complaint:

Plaintiff, a qualified machinist, was employed as such by defendant at its Riverside plant in Duluth from August 1943 until and including December 24, 1944, at which time his services ended because of his having contracted a skin ailment, medically termed dermatitis, which compelled him to quit and to seek medical aid and hospitalization. During the time mentioned, defendant was engaged in building and fitting ships for the U. S. Maritime Commission, considered and designated an essential war industry. Plaintiff's place of work was largely within the hull, in the hold and lower regions of ships while these were in the process of construction. Large and extensive scaffoldings were constructed in proximity to the place where he did his work, and he was required

to spend long periods of time below such scaffoldings and below the deck floors of the ships. Thereby he was exposed to a great deal of spun glass dust arising from material known as spun glass insulation. In the application of this material, which was done by other employes, plaintiff's body became covered with spun glass dust and his clothes infested with it. He asserts that "spun glass insulation contains, amongst other things, myriads of small, tiny particles of glass, constituting spun glass dust, and which glass dust particles are sharp, and upon the skin of the human body are irritating and abrasive, and quickly affix themselves upon and into the skin of the human body and likewise in the clothing exposed" thereto.

The action is founded upon the theory that defendant, "contrary to and in direct violation" of our statutes (Minn. St. 1941, §§ 182.29, 182.30, and 182.32 [Mason St. 1927, §§ 4171, 4172, and 4174])—

"carelessly, negligently and in utter disregard of the comfort, health and safety of your plaintiff in and about his employment, allowed and permitted large quantities of said spun glass dust to accumulate and to be and remain for long periods of time on the deck floors and scaffolding and upon the motors and other equipment in such ships, upon which your plaintiff worked, and to be scattered and showered from the floors of the decks and the scaffolding upon your plaintiff, and to be blown into the air by air hose from machinery and equipment upon your plaintiff, thus and thereby rendering such premises and the place where your plaintiff worked, dangerous, unhealthful and unsafe, all because of lack of proper care on defendant's part and its failure to provide the usual and modern devices and equipment for removing and expelling such spun glass dust from such ships."

Because of such negligent acts, plaintiff's skin infection had so far progressed during his employment that on the 18th or 19th of December 1944 he sought and was given first aid and treatment at defendant's first-aid station. He continued his employment, however, until December 24, when his affliction had reached such a

stage as to cover nearly all of his body. His employment then ceased, and on December 31, 1944, he entered St. Mary's Hospital at Duluth for treatment.

Defendant's demurrer is founded upon the grounds (1) that the court was without jurisdiction of the subject of the action, and (2) that the facts pleaded do not constitute a cause of action. We shall first consider the question of jurisdiction, since, if the cause is within the jurisdiction of the industrial commission, that ends this case.

■ As we have seen, plaintiff's disability arose out of and in the course of his employment and was due to the hazards thereof. Under § 176.04 (Mason St. 1940 Supp. § 4272-3), captioned "Liability of Employer Exclusive," it is provided:

"The liability of an employer prescribed by sections 176.02 and 176.03 shall be exclusive and in the place of any other liability to such employee, * * * or any other person entitled to recover damages at common law or otherwise on account of such injury or death, * * *."

In our decisions, we have said that the statute definitely fixes the liability of the employer to his employe. Compensation liability follows whenever the employe sustains an injury, whether accidental or occupational, if it arises out of and in the course of his employment. That liability, by virtue of the statute, is not founded upon any wrongful or negligent act on the part of the employer, but is rather "in the nature of contract liability." And, when the employer-employe relationship is established, the statute becomes a part of the contract of employment. "The employer is thereby relieved from liability for damages to the employe in an ordinary negligence case wherein he might otherwise be liable for damages to a much greater extent than under the compensation law." Lewis v. Connolly Contracting Co. 196 Minn. 108, 112, 264 N. W. 581, 583, and cases there cited.

■ Defendant concedes that, were it not for L. 1943, c. 633, § 3(n), it would be liable upon the facts pleaded. Until that enactment,

occupational diseases were specifically enumerated in the compensation act, and this type of ailment was not included. It maintains that the 1943 act included within its purpose and purview all occupational diseases, the causes of which are traceable to and have their origin in the employment and are in excess of the ordinary hazards of the employment. Defendant therefore asserts that, regardless of what liability was created under the circumstances stated in the complaint, plaintiff's cause falls wholly within the compensation act as amended by the 1943 act. And, since the compensation act in its origin and development is substitutionary and exclusive of all other remedies, plaintiff must proceed under it. Gehrke v. Weiss, 204 Minn. 445, 284 N. W. 434.

Section 3(n) reads:

"(n) **Definitions.**—The words 'occupational disease' mean a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment. Ordinary diseases of life to which the general public is equally exposed outside of employment are not compensable, except where such diseases follow as an incident of an occupational disease, or where the exposure peculiar to the occupation makes such disease an occupational disease hazard. A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed and if the occupational disease follows as a natural incident of the work as a result of the exposure occasioned by the nature of the employment. *An employer is not liable for compensation for any occupational disease which cannot be traced to the employment as a direct and proximate cause and is not recognized as a hazard characteristic of and peculiar to the trade, occupation, process, or employment or which results from a hazard to which the workman would have been equally exposed outside of the employment.*" (Italics supplied.)

Plaintiff thinks the last sentence (italicized above) is "both confusing and unfortunate." His argument proceeds thus:

"* * * What did the legislature intend? It says, 'A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed. * * *' By lifting out of the foregoing the word 'only' and by adding to the language the words 'and the disease,' we have a clear and concise definition of occupational diseases.

"The legislature certainly did not intend any such comprehensive definition of occupational diseases because it connected the foregoing by the conjunctive 'and' with 'if the occupational disease follows as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.' Hence the occupational diseases intended to be covered are those:

"1. Arising out of the employment.

"2. If there be a direct causal connection between the conditions under which the work is performed (and the disease).

"3. And if the disease follows 'as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.'

"The language referred to in No. 3 above must have been used with a definite purpose in mind. It would seem that the legislature intended that the disease must have some of its roots, from a causal point of view, in the work being performed by the employe. In our instant case, in mechanical employment as a machinist, this is simply impossible; the cause was in another and entirely separate department with which our employe had no connection."

From the trial court's memorandum, it is evident that it adopted plaintiff's theory, for it said: "Neither plaintiff nor those engaged in his particular trade contributed to the production of the irritating material." And that "Neither plaintiff nor the others engaged with him in his particular trade used that material."

As to this point, it is deemed appropriate to quote certain allegations from plaintiff's complaint. Thus, in paragraph VI, he states:

"That amongst other materials used in the construction of such ships by the defendant, and upon and in which your plaintiff worked, is an insulation material known as spun glass insulation, * * *."

In paragraph VII, reference is made to the fact that defendant—

"allowed and permitted large quantities of said spun glass dust to accumulate and to be and remain for long periods of time on the deck floors and scaffolding and upon the motors and other equipment in such ships, upon which your plaintiff worked, * * *."

In paragraph VIII, he avers:

"* * * your plaintiff on many divers days during his said employment by the defendant was showered with, and exposed to, said spun glass dust from the deck floors and scaffolding within the ships where your plaintiff was working, * * *."

From the facts recited and the specific quotations heretofore made, it is evident that plaintiff contracted dermatitis while at his usual work on his employer's premises and within the scope of his employment; also, that his affliction was caused by exposure to spun glass dust while so engaged.

The mere fact that plaintiff did not contribute to the production of the irritating material and did not actually work upon it does not negative defendant's liability under the compensation act to compensate him for the disability thus incurred. His affliction arose out of and in the course of his employment.

The obvious purpose of the 1943 act was to broaden the scope and enlarge the field within which such occupational risks were to be covered. We think the logical conclusion to be drawn is that the provision "arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment" refers to the hazards to which plaintiff was exposed in doing his work. Were this not so, it would be difficult to find an adequate reason for the adoption of the statute. And that was the conclusion

reached in Glodenis v. American Brass Co. 118 Conn. 29, 40, 170 A. 146, 150, where a similar question arose under a statute very similar to our own. There the court, in construing the statute which defined such a disease as one "peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such," said:

"* * * This definition does not require that a disease, to be within the definition, should be one which arises solely out of the particular kind of employment in which the employee is engaged, nor that it should be due to causes in excess of the ordinary hazards of that particular kind of employment. * * * The phrase 'peculiar to the occupation' is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general rule of occupations; * * * To come within the definition an occupational disease must be a disease which is a natural incident of a particular occupation, and must attach to that occupation a hazard, which distinguishes it from the usual run of occupations and is in excess of that attending employment in general."

To the same effect is LeLenko v. Wilson H. Lee Co. 128 Conn. 499, 504, 505, 24 A. (2d) 253, 256, where the court said:

"We cannot import into the conception of occupational disease under our law the element that the disease must be a usual or generally recognized incident of the employment. * * * If * * * a disease is the natural result of conditions which are inherent in the employment and which attach to that employment a risk of incurring it [the disease] in excess of that attending employment in general, an award of compensation is not precluded because the risk is one which has not become generally recognized or because only employees unusually susceptible will suffer from the disease."

In the recent case of Hunter v. Zenith Dredge Co. 220 Minn. 318, 19 N. W. (2d) 795, we considered and discussed the 1943 act, and

in doing so quoted extensively and with approval from the Connecticut cases here cited. Our views are there fully stated (220 Minn. 330-332, 19 N. W. [2d] 801, 802) and need not be restated here.

Plaintiff's counsel argues "that the legislature intended that the disease [to be compensable] must have some of its roots, from a causal point of view, in the work being performed by the employe." But here, as we have seen, plaintiff contracted an occupational disease in the line of his work because of "a hazard characteristic of and peculiar to the trade, occupation, process, or employment" in which he was engaged; the glass dust was the "direct and proximate cause" of his ailment; and, obviously, it was not "a hazard to which the workman would have been equally exposed outside of the employment." Therefore, so it seems to us, plaintiff's cause comes directly within the provisions of the 1943 act.

■ We have said time and again that the compensation law is remedial and, as such, should be given a liberal interpretation to the end that its purpose may thereby be attained. Applicable here is what the Supreme Court of the United States recently said: "The policy as well as the letter of the law is a guide to decision," and the process of interpretation "misses its high function if a strict reading of a law results in the emasculation or deletion of a provision which a less literal reading would preserve." Markham v. Cabell, — U. S. —, 66 S. Ct. 193, 195, 90 L. ed. —. We expressed the same thought in Oleson v. Bergwell, 204 Minn. 450, 456, 283 N. W. 770, 773, where we quoted from 3 Williston, Contracts (Rev. ed.) § 624, p. 1796, as follows:

"When one intention appears in one clause in an instrument, and a different, conflicting intention appears in another clause in the same instrument, that intention should be given effect which appears in the principal or more important clause."

Supporting cases are there cited.

Our conclusion is that plaintiff's cause lies within the provisions of L. 1943, c. 633, § 3(n), and that his recourse must be had under the provisions thereof.

Order reversed.

