David H. TOTH, Appellant,

v.

Gerald ARASON, Individually,
and d/b/a Arason's Body
Shop, Respondent.

No. A04–769.

Supreme Court of Minnesota.

Oct. 12, 2006.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, Lyndon F. Larsen, International Falls, MN, for Appellant.

Steven A. Nelson, International Falls, MN, for Respondent.

## OPINION

GILDEA, Justice.

Appellant David Toth sued respondent Gerald Arason individually and d/b/a Arason's Body Shop for breach of contract, deceptive trade practices, and violations of Minn.Stat. §§ 325F.60 (2004), and 325F.63 (2004), which are part of the Truth in Repairs Act, and Minn.Stat. § 325F.69 (2004), which is part of the Consumer Fraud Act. Toth's claims were based on repairs Arason made to Toth's pickup truck after the truck sustained damage in an accident. After a court trial, the district court awarded Toth damages based on Arason's use of a radiator that was not original equipment from the manufacturer (OEM),[1] and denied all of Toth's other claims. The district court also ordered costs and disbursements to Arason. Toth appealed and the court of appeals reversed the award of costs to Arason and reversed and remanded for redetermination of damages with respect to the radiator and for a breach of contract claim related to peeling paint.[2] The court of appeals affirmed in all other respects. We granted Toth's petition for review in which he raised issues regarding the appropriate measure of damages and availability of attorney fees

---

1. An OEM part is one that is supplied by the manufacturer, in this case General Motors, and meets original equipment standards. A non-OEM, or aftermarket, part is a part that is supplied by someone other than the original manufacturer of the vehicle. The parties also occasionally use the term "OEM replacement part." Toth asserts that an OEM replacement part "is a part supplied by the manufacturer that is to the original equipment standards," in other words an OEM part. At trial, various mechanics confirmed that the term OEM replacement part generally means the part is an OEM part. Arason, however, asserted that an OEM replacement part is synonymous with a non-OEM part.

2. Toth argued that he was entitled to damages for defects in connection with the painting Arason did on his truck. The issue at trial was whether the defects in the paint were due to an error in applying the clear coat during Arason's repair of the truck, or whether the paint peeling was due to hail damage. The court of appeals remanded the case on the issue because "the district court's findings do not support its conclusion that Toth has been compensated for the peeling." *Toth v. Arason*, No. A04–769, 2005 WL 1216301, at *10 (Minn.App. May 17, 2005). The parties did not appeal any issues involving the paint defects, and as such any facts and issues involving paint are not before us.

under the Truth in Repairs Act and the Consumer Fraud Act. We affirm.

Toth bought a new Chevrolet light-duty pickup truck in February 1997. In August 1997 the vehicle sustained significant damage in an accident. After the accident, Toth contacted his insurance company, Western National Insurance, and then contacted Arason, who towed Toth's truck to his body shop and prepared an initial estimate based on what could be seen from a visual inspection of the truck. Arason did not indicate on the visual damage estimate whether the parts he would use to repair the truck would be OEM.

On behalf of Western, Darris Winter, an independent insurance adjuster, went to Arason's to inspect Toth's truck. Winter estimated the cost of repairs to the truck to be $10,042.52. In the estimate, Winter allocated $356 for a new radiator and $443.25 for a new A/C condenser.

Arason completed the repairs on the truck and submitted a final invoice to Toth, which stated that it was for "parts, labor, painting, materials to repair front of truck." The total amount Arason charged for the work was $10,042.52, the exact amount that Winter had estimated. The invoice did not disclose that the radiator and condenser used were non-OEM parts. In fact, Arason was unable to obtain an OEM radiator and condenser, and instead ordered and installed a non-OEM radiator and condenser from Northern Factory Sales. Arason obtained the non-OEM radiator used in Toth's vehicle for $197.26 and the condenser for $151.66. Arason did not discount the charges for either the radiator or the condenser despite the fact that he obtained the radiator and the condenser for substantially less than the cost allotted on Winter's estimate.

In December 1997, Toth began to notice antifreeze leaking from the truck. Toth brought the truck to Arason, and Arason sent him to the GM dealer in International Falls. The dealer tried to identify the problem multiple times, but was unsuccessful. In February 2000, when the warranty on his truck was about to expire, Toth brought the truck back to the dealer. The dealer determined that the radiator was the source of the leak and informed Toth that he would have to have the radiator replaced. The cost to replace the leaking radiator would have been covered under the truck's new-vehicle warranty, but because the radiator in the truck was a non-OEM radiator it was not covered under that warranty. Toth could not afford to pay to replace the radiator immediately, and did not do so until April of 2002, when he had the radiator replaced at a cost of $810.44.

Toth sued Arason individually and d/b/a Arason's Body Shop for breach of contract, deceptive trade practices, and violations of Minn.Stat. §§ 325F.60 and 325F.63, which are part of the Truth in Repairs Act, and Minn.Stat. § 325F.69, the Consumer Fraud Act. After a 2–day bench trial, the district court awarded Toth $803.44 in damages for the replacement of the non-OEM radiator. The court denied Toth's claims with respect to the non-OEM condenser, peeling paint, and attorney fees. The court also awarded Arason costs and disbursements under Minn. R. Civ. P. 68. Toth appealed.

The court of appeals affirmed in part, reversed in part, and remanded for redetermination of the damages with respect to the radiator and for further proceedings on the breach of contract claim for peeling paint. *Toth v. Arason*, No. A04–769, 2005 WL 1216301 (Minn.App. May 17, 2005). The court of appeals held, among other things, that Toth was not entitled to attorney fees because Minn.Stat. § 8.31, subd. 3a (2004), does not apply to violations of Minn.Stat. § 325F.60 if an insurance com-

pany paid for the repairs. *Toth*, 2005 WL 1216301, at \*6. The court held that Toth had waived any claim under section 325F.69, subdivision 1, and that, even if he had not waived the issue, Toth could not recover under section 325F.69, subdivision 1, because he failed to show that his cause of action against Arason benefited the public. *Toth*, 2005 WL 1216301, at \*7. The court remanded the radiator damage award because it could not determine the district court's basis for the $803.44 figure. *Id.* The court refused to award Toth damages for the installation of the non-OEM condenser because "Toth has not cited any authority that indicates that the cost of replacing a condenser that has not been replaced is the applicable measure of damages." *Id.* at \*8. The court reversed the award of costs and disbursements to Arason because there was no evidence that a Rule 68 settlement offer had been made. *Id.* at \*10. We granted review and now affirm.

I

In his petition for review, Toth asked this court to examine the measure of damages applicable to a claim for violation of the Truth in Repairs Act and to decide whether he could recover his attorney fees. We do not reach these issues because, as set forth below, we find that Toth cannot maintain a cause of action under the Truth in Repairs Act.[3]

█ The court of appeals held that the remedies provision in the Truth in Repairs Act was not available to Toth. *See Toth*, 2005 WL 1216301, at \*6. This statutory construction question is one we review de novo. *Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 826 (Minn.2005). When construing statutes, if the plain language of

the statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2004).

There are three provisions of the Truth in Repairs Act at issue in this case, Minn. Stat. §§ 325F.60, 325F.63, and 325F.64. Toth contends that Arason violated section 325F.60, and he argues that section 325F.63 provides for a remedy to redress this violation. Arason contends to the contrary that the remedy provision in section 325F.63 does not apply here because Toth's insurance company paid for all of the repairs over the deductible amount. Arason relies on section 325F.64, subdivision 1, to support his argument. We examine each of the three provisions in turn.

█ Toth argues that Arason violated section 325F.60, subdivision 1(e), because Arason did not identify on the invoice that he had used non-OEM parts in the repair. Minnesota Statutes § 325F.60, subd. 1(e), reads in pertinent part:

> Upon completion of repairs, a shop shall provide the customer with a copy of a dated invoice for the repairs performed. \* \* \* The invoice shall contain the following information: \* \* \* (e) a notation specifying which parts, if any, are new, used, rebuilt, reconditioned, or replated if that information is known by the shop. If parts, other than window glass, used in the repair are new parts, the invoice must indicate whether or not those parts are original equipment parts \* \* \*.

There is no question that Arason violated section 325F.60, subdivision 1(e), when he failed to provide Toth with a written invoice or estimate noting whether the radia-

---

**3.** The district court awarded Toth $803.44 in damages. Arason did not appeal this award, and so this award is not before us.

tor and condenser were OEM parts.[4]

■ Turning to section 325F.63, Toth contends this provision entitles him to bring a private cause of action for Arason's violation of section 325F.60. Generally, a statute must provide for a private cause of action in order for an individual to have standing to sue. *See State by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 496 (Minn.1996). Section 325F.63, subdivision 3, states: "Any violation of sections 325F.56 to 325F.66 shall be deemed a violation of section 325F.69, subdivision 1, and the provisions of section 8.31, shall apply." While not providing a separate private right of action, section 325F.63 could be construed to give an individual the right to bring a private cause of action for a violation of the Truth in Repairs Act through application of section 8.31.[5]

Arason argues and the court of appeals held that section 325F.64, subdivision 1, specifically precludes Toth from relying on section 325F.63 to bring his claim. Section 325F.64, subdivision 1, provides: "Sections 325F.57 to 325F.59 and 325F.61 to 325F.66 shall not apply if an insurer or service contract company pays up to 90 percent of the charge for repairs or pays a charge for repairs above a deductible amount specified in an insurance agreement or service contract." In other words, section 325F.64, subdivision 1, renders inoperative the only remedial provision of the statute, section 325F.63, if an insurance company has paid for the cost of repairs over the deductible amount.

The parties do not dispute that Toth's insurer paid for the repairs to his truck, less a $250 deductible for which Toth was responsible. Section 325F.64, subdivision 1, therefore, by its plain and unambiguous terms, precludes any remedy to Toth under section 325F.63.

Notwithstanding the plain language of section 325F.64, subdivision 1, Toth argues that construing the statute to preclude his claim "produces an absurd result and one plainly at variance with the policy of the legislation as a whole." In support of his argument, Toth points to the 1981 amendment to section 325F.64, subdivision 1, which removed section 325F.60 from the listed statutory exemptions. Act of May 8, 1981, ch. 134, § 2, 1981 Minn. Laws 404, 405. Toth argues that to construe section 325F.64 in accordance with the plain language would render the 1981 amendment meaningless. We disagree.

Toth is correct to note that we have, in the past, "look[ed] beyond the statutory

---

**4.** The parties do not dispute that Arason failed to provide Toth with an invoice identifying the radiator or the condenser as either OEM or non-OEM, and Arason admits a violation of section 325F.60, subdivision 1(e), with respect to the radiator. Arason nonetheless argues that he did not violate section 325F.60, subdivision 1(e), with respect to the condenser because the condenser that he installed on the vehicle was the same type of condenser that he would have obtained through the dealer. This argument is without merit, because section 325F.60, subdivision 1(e), specifically states: "If parts, * * * used in the repair are new parts, the invoice *must indicate whether or not* those parts are original equipment parts." (Emphasis added.) Arason's statutory obligation was to disclose the OEM status

of the parts regardless of whether they were or were not OEM parts. Therefore, we conclude that Arason violated section 325F.60, subdivision 1(e), with respect to both the radiator and the condenser.

**5.** Minnesota Statutes § 8.31, subd. 3a (2004), grants individuals a private cause of action:

In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

language to other indicia of legislative intent" when "the literal meaning of the words of a statute would produce an absurd result." *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 494 (Minn.1997). We have said, however, that "[w]e can disregard a statute's plain meaning only in rare cases where the plain meaning utterly confounds a clear legislative purpose." *Weston v. McWilliams & Assocs. Inc.,* 716 N.W.2d 634, 639 (Minn.2006) (internal quotations omitted). This is not that rare case insofar as the remedies provision in section 325F.63 is concerned.

The legislature set out a statutory obligation in section 325F.60, subdivision 1(e), that those performing repair work must provide an accurate written description of their work. The legislature also made a judgment that those consumers who utilize insurance to pay for repairs could not litigate claims for violation of that statutory obligation. This is not an absurd result. *Cf. Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust,* 659 N.W.2d 755, 762 (Minn.2003) (applying plain meaning of term even though it resulted "in a class of accident victims being uncompensated").[6]

We hold that by operation of the plain language of section 325F.64, subdivision 1, the remedy section of the Truth in Repairs Act, section 325F.63, does not apply here, and a private cause of action for damages and attorney fees under section 8.31, subdivision 3a, therefore is not available.[7]

## II

We next address Toth's alternative argument that Arason separately violated the Consumer Fraud Act, section 325F.69,

---

**6.** Inasmuch as section 325F.64 falls between sections 325.61 and 325.66, the dissent notes that section 325F.64 could be read to exempt itself from operation when an insurance company pays up to 90 percent of the repair costs. This reading would also preclude exemption of the remedies provision in section 325F.63. Thus, the dissent suggests there is an ambiguity here that allows us to resort to canons of statutory construction and legislative history. We do not read section 325F.64 to create such an ambiguity for two reasons. First, when exemption provisions like section 325F.64 are utilized, these provisions often are placed within a sequence of sections that, by the dissent's reading, *could* render the exemption provisions a nullity. *See, e.g.,* Minn.Stat. § 141.35 ("Sections 141.21 to 141.35 shall not apply to the following * * *"); Minn.Stat. § 171.39(a) ("The provisions of sections 171.33 to 171.41 do not apply to * * *"); Minn.Stat. § 325E.19 ("Sections 325E.169 to 325E.201 do not apply to * * *"); Minn.Stat. § 325H.02, subd. 2 ("Sections 325H.01 to 325H.10 do not apply to * * *"); Minn.Stat. § 26.3341 ("Sections 326.32 to 326.339 do not apply to * * *"). Despite this apparent legislative drafting practice, no decision has been called to our attention that construes the legislative decisions reflected in these exemption provi-

sions a nullity or finds them ambiguous. Second, the question we are called on to answer in this case involves a statutory right created by the legislature. Whatever common law rights Toth has in the absence of the Truth in Repairs Act are unaffected by the decision in this case. The decision here simply "acts as a limit on the new statutory rights created by the" Truth in Repairs Act. *See Mut. Serv. Cas. Ins.,* 659 N.W.2d at 762 (construing Minnesota's No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–65B.71 (2004)). Because "[t]his court did not have authority to create these rights[,] * * * likewise, it does not have authority to extend them beyond those provided by the legislature." *Id.* Our decision to adhere to the plain language used in section 325F.64 to preclude a statutory remedy confirms this principle of judicial restraint.

**7.** Because we hold that the plain language of section 325F.64, subdivision 1, prevents Toth from maintaining a private cause of action under section 325F.63 for Arason's violation of section 325F.60, subdivision 1(e), we need not address Toth's arguments regarding the public benefit requirement for bringing an action under section 8.31, subdivision 3a, or the measure of damages applicable for Arason's use of non-OEM parts.

subdivision 1, entitling Toth to collect damages and attorney fees under section 8.31, subdivision 3a. The Consumer Fraud Act states:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Section 8.31, subdivision 3a, applies to violations of the Consumer Fraud Act.

Toth claims that, "regardless of the truth in repairs statute, Toth was entitled to proceed under § 325F.69, subd. 1," because Arason did not inform Toth that installation of non-OEM parts would void the manufacturer's warranty and instead told Toth that there would be a one-year guarantee whether Arason used an OEM or non-OEM part. Arason argues that Toth first raised this claim at the appellate level. The court of appeals agreed, noting that there was "nothing in the record that indicates that Toth claimed in the district court that even if Arason did not violate Minn.Stat. § 325F.60, Arason's statements and omissions violated Minn.Stat. § 325.69, subd. 1." *Toth*, 2005 WL 1216301, at *7. The court of appeals held that because the district court did not address the claim, it would not address the claim for the first time on appeal. *Id.*

We agree with the court of appeals. We have said that "a reviewing court generally may consider only those issues that the record shows were presented to and considered by the trial court." *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 673 (Minn.2001); *see also Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) ("Nor may a party obtain review by raising the same general issue litigated below but under a different theory."). Although the complaint generally alleges that Arason violated the Consumer Fraud Act, Toth argued his case to the district court as one stemming from Arason's violation of section 325F.60 which, if proved, would have been deemed a violation of the Consumer Fraud Act. Toth did not argue to the district court that there was behavior separate from the violation of section 325F.60 that would also be a violation of the Consumer Fraud Act. Because this issue was not pressed below, we decline to address it on appeal.[8]

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. Toth alleged a violation of the Truth in Repairs Act (the Act), which, like the Consumer Fraud Act, is a consumer protection act. *See* Minn. Stat. §§ 325F.57–.66, 325F.69 (2004). In my view, the Act, like the Consumer Fraud Act, "reflect[s] a clear legislative policy encouraging aggressive prosecution of statutory violations" and should be "generally very broadly construed to enhance consumer protection." *See State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 495–96 (Minn.1996). The court, however, gives the Act a narrow reading, which erodes, rather than enhances, consumer protection. Further, the court's interpretation of the Act both con-

---

8. In his amended complaint, Toth alleged very generally that Arason violated the Deceptive Trade Practices Act; Toth did not, however, raise Minn.Stat. § 325D.45 (2004) before either the court of appeals or this court. Ac-cordingly, we express no opinion on the merits of such a claim. *See In re Olson*, 648 N.W.2d 226, 228 (Minn.2002) ("It is axiomatic that issues not 'argued' in the briefs are deemed waived on appeal.").

travenes the clearly expressed goal of the legislature and nullifies a legislative action.

Since its original enactment in 1978, the Act has required repair shops to provide a customer with a dated invoice for repairs. Minn.Stat. § 325F.60, subd. 1 (1980); Minn.Stat. § 325F.56, subd. 2 (1980) (defining "repairs" to mean "work performed for a total price of more than $100 and less than $2,000"). And since its original enactment the Act has required the written invoice to disclose which parts were used, rebuilt, or reconditioned. Minn.Stat. § 325F.60, subd. 1(d) (1980). But, as originally enacted, the Act did not apply at all "if an insurer or service contract company pays up to 90 percent of the charge for repairs or pays a charge for repairs above a deductible amount specified in an insurance agreement or service contract." Minn.Stat. § 325F.64, subd. 1 (1980). In other words, as originally enacted, when an insurance company was paying for repairs the vehicle owner was not entitled to even an invoice for the repair work.

In 1981, the legislature amended the Act in several ways significant to this case. First, the legislature created a new definition of "repairs" specific to section 325F.60, the invoice requirement. Under the 1981 amendment, "repair" for purposes of the invoice requirement was defined to include, among other things, "work of any value performed under a manufacturer's warranty, a service contract, or an insurance policy." Act of May 8, 1981, ch. 134, § 1, 1981 Minn. Laws 404, 404. Thus, under the 1981 amendment, a customer is entitled to a written invoice regardless of who pays for the repairs and regardless of how much the repairs cost. More to the point, the 1981 amendment specifically created the right of a customer to a written invoice for repairs that are covered by insurance. Second, because the Act as originally passed exempted in-

sured repairs from all of its requirements, the legislature amended section 325F.64, the exemption section, to carve out section 325F.60, the invoice requirement. Act of May 8, 1981, ch. 134, § 2, 1981 Minn. Laws at 405. Whereas section 325F.64 previously exempted all of the Act if an insurer paid for repairs, under the 1981 amendment section 325F.60, the invoice requirement, applies to insured repairs.

But the legislature did not amend section 325F.63, the remedies provision of the Act. That section continues to provide that *any* violation of the Act "shall be deemed a violation of section 325F.69, subdivision 1, and the provisions of section 8.31, shall apply." Minn.Stat. § 325F.63, subd. 3 (2004) (emphasis added). Section 325F.69 defines consumer fraud. Section 8.31, subdivision 3a (2004), allows a person injured by a violation of specified consumer protection laws to bring a civil action for damages and to recover costs of investigation and attorney fees. But section 8.31 also authorizes the attorney general to investigate violations of unlawful business practices, gives the attorney general the power to obtain documents and conduct discovery of unlawful business practices without the commencement of litigation, and authorizes the courts to enjoin violations of the law and impose civil penalties. Minn.Stat. § 8.31, subds. 1, 2, and 3 (2004).

The requirement that the customer be provided with a written invoice was amended in 1987 to add the requirement at issue here, namely, that the invoice also disclose whether any new parts used in repairs are or are not original equipment parts. Act of May 6, 1987, ch. 64, § 4, 1987 Minn. Laws 106, 116. Significantly, the same legislation that amended section 325F.60, the invoice requirement, made two other changes to Minnesota's insurance laws. First, the 1987 legislation also amended Minn.Stat. § 72A.20, subd.

12a(f)(7) (1988) (now Minn.Stat. § 72A.201, subd. 6 (2004)), to make it an unfair settlement practice for an automobile insurer to require, as a condition of payment of a claim, that repairs to any damaged vehicle be made using anything but original equipment parts. Act of May 6, 1987, ch. 64 § 1, 1987 Minn. Laws at 113. And second, the 1987 legislation amended Minn.Stat. § 72B.091, subd. 2 (2004), to require that an insurance adjuster's appraisal of a damaged vehicle disclose to the vehicle owner "any parts to be used, other than window glass, which are not original equipment parts * * *." Act of May 6, 1987, ch. 64 § 2, 1987 Minn. Laws at 115.

These are important consumer protections not to be lightly discarded. The requirement of a written invoice specifically detailing whether new parts used in repairs are original equipment parts is not only a check on the repair shop, but also a check on automobile insurers' claims settlement practices. The written invoice from the repair shop is the only evidence the consumer has as to whether the insurance company has in fact paid for original equipment parts, as the statute requires. And, a written invoice in the hands of the vehicle owner that clearly discloses whether original equipment parts were used in the repairs discourages an insurance adjuster from colluding with a repair shop to bill the insurance company for more expensive original equipment parts but use cheaper after-market parts in making the repairs and split the difference.

The court holds that, despite the amendment of section 325F.60, the invoice re-

quirement, to specifically require that customers receive a written invoice even if insurance pays for the repairs, there is no remedy available to those customers if the written invoice is not provided or, as here, the written invoice is inaccurate or incomplete.[1] Not only does the court conclude there is no remedy available to customers, but the effect of the court's decision thwarts the purpose of the 1987 insurance reform legislation. Because the court's decision removes violations of the invoice requirement from the scope of section 8.31, it bars the attorney general from investigating violations of the invoice requirement in the case of repairs covered by insurance. It similarly eliminates the power of the courts to enjoin violations of the invoice requirement and to award civil penalties for such violations. It also deprives vehicle owners of the information they need to resist unfair settlement practices by insurers. And it eliminates the paper trail necessary to detect kickbacks from repair shops to insurance adjusters. With the legislature having specifically created these protections for consumers by means of the written invoice requirement, I cannot accept that the legislature intended its actions to have no "teeth" by not providing a remedy for violations of the invoice requirement.

But that is what the court concludes. To reach this conclusion the court relies on what it considers to be the plain language of section 325F.64, the exemption provision. Section 325F.64, subdivision 1, provides:

---

1. The court suggests that, even without the ability to enforce the written invoice requirement under section 8.31, Toth still has "[w]hatever common law rights Toth has in the absence of the Truth in Repairs Act." Under the common law, it would appear that Toth will recover no more than $803.44. The comparison of those rights, whatever they may be, to Toth's rights under section 8.31 only illustrates that this is precisely the type of case—one involving clear consumer fraud and small monetary damages—that the private attorney general provision, section 8.31, subdivision 3a, was designed to make economically possible for private plaintiffs to prosecute and for private attorneys to take.

Sections 325F.57 to 325F.59 and 325F.61 to 325F.66 shall not apply if an insurer or service contract company pays up to 90 percent of the charge for repairs or pays a charge for repairs above a deductible amount specified in an insurance agreement or service contract.

The court concludes that under the plain language of section 325F.64, the exemption provision, the remedies available under section 325F.63—including the authority of the attorney general to investigate and prosecute violations—are not available if the repairs are paid by insurance. But under the plain language of section 325F.64, section 325F.64 itself—the exemption provision—does not apply to insured repairs: "Sections 325F.57 to 325F.59 and *325F.61 to 325F.66* shall not apply if an insurer or service contract company pays * * *." (Emphasis added.)[2]

I would therefore conclude that the language of the statute is not unambiguous, and we must construe the statute to effectuate the intent of the legislature. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986). In doing so, we are to be guided by several principles. First, in ascertaining the legislature's intent, we consider the occasion and necessity for the law, the mischief to be remedied by it, the object to be attained by it, the circumstances of its enactment, and the consequences of a particular interpretation. *Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 736 (Minn.1999). Second, the statute should be construed to make it effective, rather than to nullify it. *Sandy v. Walter Butler Shipbuilders, Inc.*, 221 Minn. 215, 223, 21 N.W.2d 612, 616 (1946). Third, we should construe the statute to avoid absurd or unjust consequences. *Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn.2001). Finally, remedial statutes are to be liberally construed. *State v. Indus. Tool & Die Works, Inc.*, 220 Minn. 591, 604, 21 N.W.2d 31, 38 (Minn.1945).

Applying these principles, I would hold that the 1981 amendment removed section 325F.60, the invoice requirement, from section 325F.64, the exemption provision, for all purposes, and therefore section 325F.63, which provides that "any violation" of the Act is a violation of section 325F.69, subdivision 1, applies to any violation of section 325F.60, the invoice requirement. The occasion and necessity for the law and the mischief to be remedied by the Act as amended in 1981 and 1987 appear to have been in part the practice of automobile insurers in conditioning payment of claims on the use of other than original equipment parts, which as this case demonstrates have the potential to void the

---

**2.** The court also relies on our earlier decision, *Mutual Service Casualty Insurance Co. v. League of Minnesota Cities Insurance Trust*, 659 N.W.2d 755 (Minn.2003), in which we held that a pedestrian struck by a police car was not entitled to benefits under Minnesota's No–Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41–71 (2004), because of an obscure provision in the definition of "motor vehicle" that required the car to be registered. Because of another obscure provision in Minn.Stat. § 168.012, subd. 1(b) (2004), patrol cars are not required to be registered or display numbered license plates.

Nowhere in *League of Minnesota Cities Insurance* did we suggest that, in drafting either the No–Fault Act or the list of motor vehicles required to be registered, the legislature had in mind whether a pedestrian struck by a marked police car should be entitled to no-fault benefits. In contrast, in this case, the Act was amended for the specific purpose of requiring that customers receive certain information about their insured repairs in order to discourage insurance fraud and unfair claim settlement practices. It is unreasonable to assume that, having done so, the legislature would then render the requirement a nullity by providing no remedy for its violation. The ambiguity in the Act after its amendment is evidence enough that the legislature intended to provide for such a remedy.

manufacturer's warranty on the damaged vehicle. The objects to be attained by the Act as amended are enforcement of the statutory prohibition against unfair settlement practices and deterrence of insurance fraud by putting in the hands of the consumer an itemized invoice from the repair shop showing whether or not the insurance company paid for original equipment parts. This interpretation is in accordance with the legislature's clearly expressed goal of requiring that customers receive a written invoice when repairs are paid for by insurance. It also gives effect to the legislature's 1987 amendment by providing a remedy for any violation of section 325F.60 and concomitant unfair settlement practices by the automobile insurer. Finally, it promotes our goal of construing consumer protection statutes broadly to enhance consumer protection.