Sherry A. OLSON, n/k/a Sherry A. Olson–
Kelm, Petitioner, Respondent,

v.

Scott M. OLSON, Respondent,

Ann G. Farr, Petitioner, Appellant.

No. C7–93–2425.

Supreme Court of Minnesota.

July 21, 1995.

Michael L. Perlman, Laura Ledsworth–Wang, Perlman Law Office, PA, St. Louis Park, and Michelle Chez, Wayzata, for appellant.

Barbara N. Nevin, Milavetz, Gallop & Milavetz, PA, Edina, for Sherry A. Olson.

Scott M. Olson, Plymouth, pro se.

Michael D. Dittberner, MN State Bar–Family Law Section, Kissoon & Clugg, Edina, amicus curiae.

## OPINION

GARDEBRING, Justice.

In this case we consider the reach of grandparent visitation rights authorized under Minn.Stat. § 257.022, subd. 2 (1992 & Supp.1995) (amended 1993). Appellant Ann Farr (Farr) petitioned the trial court for visitation with her granddaughter S.O., the child of Farr's own daughter Sherry A. Olson–Kelm (Olson–Kelm) and Olson–Kelm's former husband Scott Olson (Olson), because Olson–Kelm had denied Farr's requests to see S.O. After several failed attempts at a negotiated resolution, the trial court granted Farr's motion, finding that it was in the child's best interests for S.O. to have contact with Farr. On appeal, the court of appeals reversed, holding a grandparent whose own child, the parent of the grandchild, objects to the visitation, has no right to visitation under common law or under Minn.Stat. § 257.022, subd. 2. We reverse, based on the clear language of the statutory grant of grandparent visitation rights.

The child, S.O., was born in November 1985 to Olson–Kelm and Olson, who divorced in 1988. The parents were awarded joint legal custody of S.O., with Olson–Kelm to have primary physical custody and Olson to have reasonable visitation rights.[1] For some period after the divorce of S.O.'s parents, Farr maintained a good relationship with both S.O. and Olson–Kelm, visiting the child frequently and caring for her when Olson–Kelm was out of town. At some point, the relationship between Farr and Olson–Kelm deteriorated and ultimately Olson–Kelm refused to allow any contact between her mother and her daughter. For more than 18 months, beginning in April 1992, Farr sought a court order permitting her to visit her grandchild. During this period, the parties attempted to reach a settlement of the visitation issue, often with the assistance of court services personnel, but they were ultimately unsuccessful. A visitation evaluation was completed in May 1993, a hearing was held in June 1993 and in October 1993 the trial court affirmed the findings of the family court referee that visitation between Farr and S.O. was in the child's best interests. The trial court ordered the requested visitation, subject to certain limitations.[2] The court of

---

1. Although Olson is a named respondent in this appeal, he does not object to the visitation between Farr and his daughter, and has cooperated by allowing Farr to visit S.O. during his own visitation periods with the child.

2. The referee authorized Farr to have visitation with S.O. on Wednesdays, from 9:00 a.m. to 6:00 p.m., during the summer and on alternating Wednesdays during the school year, from one-half hour after school to 8:00 p.m. The visitation was conditioned upon Farr's abstinence from the

appeals reversed, indicating that it could identify no basis for providing Farr visitation rights and noting that under common law, grandparents' visitation rights were derivative through their child and therefore could not be enforced against the wishes of that child. Further, the court of appeals held that the legislature intended that the statutory right to grandparent visitation, authorized in Minn.Stat. § 257.022, subd. 2, in cases of dissolution, could apply only against the wishes of the former in-law.

As in all matters involving court-established family relationships of children, we begin with reference to our paramount commitment to the best interests of the children. We said a century ago, "The cardinal principle in such matters is to regard the benefit of the infant as paramount * * *." *Flint v. Flint,* 63 Minn. 187, 189, 65 N.W. 272, 273 (1895), and we have reiterated that premise in many recent cases. *See Welfare of D.L.,* 486 N.W.2d 375 (Minn.1992), *cert. denied* ____ U.S. ____, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992); *Pikula v. Pikula,* 374 N.W.2d 705 (Minn.1985). Further, we agree with the New Hampshire Supreme Court which has said that what is at issue in grandparent visitation cases is "the right of the child to * * * know her grandparents," and not the interests of the grandparents. *Roberts v. Ward,* 126 N.H. 388, 493 A.2d 478, 482 (1985).[3]

Historically, grandparents had virtually no legal right to maintain a relationship with a grandchild independent of the wishes of the child's parents. *In re Niskanen,* 301 Minn. 53, 57, 223 N.W.2d 754, 757 (1974). Reluctance on the part of legislatures and courts to intervene in family relationships flowed from the notion that parental authority with regard to the raising of children should be impacted by the state as little as possible.[4] However, beginning in the 1970's, states started to address by statute the issue of grandparent visitation rights, and in 1976 the Minnesota Legislature responded to the issue by adopting Minn.Stat. § 257.022. In its original form, the statute on grandparent visitation rights provided for such visitation, where there had been a divorce, only to the parent of the noncustodial party. *See* Minn. Stat. § 257.022 (1976). However, since then the statute has been amended on a number of occasions and in its current form provides:

> [T]he court may, upon the request of the *parent or grandparent of a party,* grant reasonable visitation rights to the unmarried minor child, after dissolution of marriage * * * if it finds that visitation rights would be *in the best interests of the child* and *would not interfere with the parent child relationship.* The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

Minn.Stat. § 257.022, subd. 2 (1992 & Supp. 1995) (amended 1993) (emphasis added).

Thus, the statute sets out a three part test:

1) is the individual seeking visitation rights with the child the parent or grandparent of a party to the dissolution proceeding?

2) is the visitation in the best interests of the child?

3) would the visitation interfere with the parent-child relationship?

Based on the record, we conclude that all three parts of the test are met and that the order of the trial court should be affirmed.

## I. STANDING

Olson–Kelm does not contest that Farr comes within the plain meaning of the statute as "the parent of a party to the

---

use of any mind or mood-altering chemicals, not prescribed by a physician, 48 hours prior to and during the visitation. Further, Olson–Kelm was ordered to make no negative statements about Farr in S.O.'s presence, and Farr was ordered to make no negative statements about Olson, Olson–Kelm or Olson–Kelm's new husband.

3. The statute at issue here provides to the grandparents the right to petition for visitation but we believe the legislature, by adopting the statute,

intended to protect children from losing contact with their grandparents because of disputes between parents and grandparents.

4. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), *reh'g denied* 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090 (1944).

dissolution proceeding," but argues instead that the legislature did not clearly intend to grant "custodial" grandparents visitation rights by deleting the word "non-custodial" before the word "party" in 1977. We do not agree. Where the language of a statute is clear and free from all ambiguity, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1994). Further, we have held that courts may not supply what the legislature has purposefully omitted. *Wallace v. Comm. of Tax.*, 289 Minn. 220, 230, 184 N.W.2d 588, 593–94 (1971). Here, an unambiguous statute provides standing for the parent of a party in a dissolution proceeding to seek visitation with a grandchild. We need look no further, but even if we did, we would note that in 1977 the Minnesota Legislature removed the modifying phrase "non-custodial" from the statute, and we will not supply, by judicial fiat, what the legislature has intentionally removed. Based on the clear statutory language of Minn.Stat. § 257.022, subd. 2, we hold that a parent or grandparent of a party to a dissolution proceeding may have visitation with a grandchild, despite the objection of either parent, when other statutory requirements are met. Farr has standing to seek visitation under the statute and has properly done so.

## II. BEST INTERESTS OF THE CHILD

■ The next statutory element requires that the trial court make a determination as to whether the visitation would be in the best interests of the child. Minn.Stat. § 257.022, subd. 2. We read the statutory language directing the court to consider the amount of past personal contact between the grandparents and the grandchild to be part of this general test.

■ The trial court has broad discretion to determine what is in the best interests of the child in the area of visitation and its determination will not be overturned absent an abuse of discretion. *Manthei v. Manthei*, 268 N.W.2d 45, 46 (Minn.1978). In this case,

the trial court found that S.O. had "extensive contact" with Farr in the past, a conclusion apparently uncontested by Olson–Kelm, and further that it was in the best interests of S.O. to continue contact with her grandmother. S.O., who is now nearly 10 years old, had frequent contacts with her grandmother until recently, and, according to the court-ordered visitation evaluation, enjoyed spending time with her and was very attached to her. S.O. is distressed about the loss of relationship with Farr and misses her. While the record does not contain the detailed findings on "best interests" required, for example, in the determination of custody pursuant to Minn. Stat. § 518.17, subd. 1 (1994), we conclude that the trial court here has made sufficient findings on the issue of best interests and that the record adequately supports those findings.[5] The trial court did not abuse its discretion in finding that visitation between Farr and S.O. was in S.O.'s best interests.

## III. NON–INTERFERENCE WITH PARENT–CHILD RELATIONSHIP

■ The third prong of the statutory test for grandparents visitation addresses whether providing children the opportunity to know their grandparents will negatively impact the primary family relationship between parents and children. It requires a finding that the granting of grandparent visitation would not interfere with the parent-child relationship. Minn.Stat. § 257.022, subd. 2. While the trial court did not reference this statutory provision in its order, its findings plainly take the standard into account. The trial court specifically noted that Olson, S.O.'s father, was supportive of the visitation with Farr, and further ordered that neither Olson–Kelm nor Farr make any negative statements about the other in S.O.'s presence. While it would be preferable to have a more specific finding as to the non-interference with the parent-child relationship, it is also important to children to have closure on matters such as this. Remand to the trial court for further findings on this prong of the test would inevitably delay the resolution

---

5. We note that the granting of grandparent visitation rights is, by its essential nature, a less critical decision than the judicial determination as to custody, especially where custody is disput-

ed. Therefore, absent a legislative requirement, we are unwilling to impose the same level of factfinding required in custody determinations.

of this painful matter, and, in our view, would not likely change the outcome. The decision of the court of appeals is reversed and the trial court order allowing visitation between S.O. and Farr is reinstated.

Reversed.