**Kelli ROHMILLER, et al., Appellants,**

v.

**Andrew HART, Respondent,**

and

**Jennifer Joseph, Guardian ad Litem.**

No. A10–1348.

Supreme Court of Minnesota.

Feb. 29, 2012.

Debra D. Julius, Debra Daniels Julius Law Office Ltd., Prior Lake, Minnesota, for appellants.

Glenn P. Bruder, Terry L. Mitchell, Mitchell, Bruder & Johnson, Bloomington, Minnesota, for respondent.

## OPINION

GILDEA, Chief Justice.

This case concerns Kelli Rohmiller's petition for visitation with her niece, B.H. The district court awarded Rohmiller visitation with B.H. under Minn.Stat. § 257C.08 (2010) on terms to which B.H.'s father, Andrew Hart, objects. The court of appeals reversed. Because we conclude that Rohmiller is not entitled to visitation under either Minn.Stat. § 257C.08 or the common law, we affirm.

Rohmiller is the identical twin sister of B.H.'s mother, who is now deceased. Hart and B.H.'s mother had resided together for approximately the first year of B.H.'s life. Around B.H.'s first birthday, however, Hart injured B.H. in an incident that resulted in Hart pleading guilty to malicious punishment of a child. After this incident, Hart and the mother separated and B.H. and her mother moved to Iowa. For the next year, B.H. and her mother lived with various members of the mother's family, including Rohmiller. During that year, Rohmiller resided with B.H. for approximately 5 weeks, and otherwise saw B.H. approximately 8 hours per month. After B.H.'s mother died, a different family member (who is not a party to this case) petitioned for custody of B.H. in an out-of-state proceeding. Hart was awarded custody of B.H. in that proceeding. Hart then moved with B.H. to Minnesota. After Hart moved to Minnesota, he did not allow the Rohmiller family to visit B.H.

Rohmiller and her father, Clayton Rohmiller,[1] petitioned the district court for

---

1. For clarity, we will refer to Kelli Rohmiller as Rohmiller and Clayton Rohmiller as Clay- ton.

visitation with B.H. "pursuant to Minn. Stat. § 257C.08, and all the laws and equities of the State of Minnesota." The district court appointed a Guardian ad Litem for B.H. and both Hart and Rohmiller were evaluated by a forensic psychologist. Although the guardian found that there was animosity between the parties, the guardian's report indicated that both Hart and Rohmiller are positive forces in B.H.'s life. The report stated that B.H. was "flourishing" under Hart's care and that B.H. and Rohmiller had a good relationship. The psychologist concluded that Hart was a "dedicated child-centered parent" and that Rohmiller also had a child-centered approach to parenting but that "it would be important if [Rohmiller had] visitation with [B.H.] that there would be clear communication and understanding of [Hart's] parenting goals and ... parental expectations." The guardian's report concluded that it would be in B.H.'s best interest for both Rohmiller and Clayton to be awarded visitation.

By the time of the evidentiary hearing on Rohmiller and Clayton's petition, Hart no longer objected to visitation between B.H. and Clayton, provided that such visitation occurred in Minnesota and subject to other conditions. Nor did Hart object to Rohmiller seeing B.H. during visits between B.H. and Clayton. But Hart argued that Rohmiller had no right to visitation with B.H. independent of Clayton.

■ After an evidentiary hearing, the district court "jointly granted" Rohmiller and Clayton unsupervised visitation with B.H. The court provided that the Rohmillers "do not have to both be present during visitation" and that Rohmiller could "exercise visitation without the presence of" Clayton. The court noted that Minn.Stat. § 257C.08 does not specifically grant visitation rights to aunts or uncles, but concluded that "the statute does not preclude or prohibit visitation" with classes of people outside of the statute. Turning to case law, the court cited *State ex rel. Burris v. Hiller*, 258 Minn. 491, 501, 104 N.W.2d 851, 858 (1960), for the proposition that Minnesota courts have "previously determined that aunts and uncles have certain rights with respect to visiting their nieces and nephews." Finally, the court concluded that courts sit as parens patriae in matters regarding children, and that courts have broad equitable powers in such matters.[2] Based on these conclusions, the court decided that Minn.Stat. § 257C.08, interpreted broadly, did not preclude granting visitation to Rohmiller.

Hart appealed to the court of appeals, challenging the amount of visitation awarded to Clayton and the grant of any visitation to Rohmiller "independent of that exercised by [Clayton]." The court of appeals affirmed the district court's grant of visitation to Clayton.[3] *Rohmiller v. Hart*, 799 N.W.2d 612, 615 (Minn.App. 2011). But the court of appeals reversed the award of visitation to Rohmiller, holding that Minn.Stat. § 257C.08 does not extend visitation rights to aunts generally and that she had no right to visitation under Minnesota law apart from the statute. *Rohmiller*, 799 N.W.2d at 615–618.

We granted Rohmiller's petition for review. Rohmiller urges us to reverse the court of appeals, contending that the dis-

---

**2.** The doctrine of parens patriae recognizes that "states may intrude on parental rights in order to protect the general interest in [a] youth's well being." *SooHoo v. Johnson*, 731 N.W.2d 815, 822 (Minn.2007) (internal quotations omitted) (citing *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)).

**3.** The district court's award of visitation to Clayton is not challenged on appeal to our court.

trict court properly awarded her third-party visitation under Minn.Stat. § 257C.08. Alternatively, Rohmiller argues that the district court properly awarded her visitation under the common law or the court's equitable powers.

## I.

■■■ We turn first to Rohmiller's argument that she has a right to visitation with B.H. under Minn.Stat. § 257C.08. We review this question of statutory interpretation de novo. *Toth v. Arason,* 722 N.W.2d 437, 440 (Minn.2006) (citation omitted). Our objective in statutory interpretation is to effectuate the intent of the legislature, reading the statute as a whole. Minn.Stat. § 645.16 (2010); *see City of Saint Paul v. Eldredge,* 800 N.W.2d 643, 648 (Minn.2011) (citations omitted). If the plain language of a statute is clear and free from all ambiguity, we will not disregard the letter of the law under the pretext of pursuing its spirit. Minn.Stat. § 645.16. When the language is unclear or ambiguous, however, we will go beyond the plain language of the statute to determine the intent of the legislature. *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010) (citation omitted).

The statute at issue, Minn.Stat. § 257C.08, allows a court to award visitation rights to petitioners who meet specific criteria. Subdivision 1 provides for visitation by a child's grandparents and great-grandparents:

> If a parent of an unmarried minor child is deceased, the parents and grandparents of the deceased parent may be granted reasonable visitation rights to the unmarried minor child during minority by the district court upon finding that visitation rights would be in the best interests of the child and would not interfere with the parent child relationship. The court shall consider the

amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

Minn.Stat. § 257C.08, subd. 1. Subdivision 4 provides for visitation by other persons with whom the child has resided for 2 or more years:

> If an unmarried minor has resided in a household with a person, other than a foster parent, for two years or more and no longer resides with the person, the person may petition the district court for an order granting the person reasonable visitation rights to the child during the child's minority. The court shall grant the petition if it finds that:
>
> (1) visitation rights would be in the best interests of the child;
>
> (2) the petitioner and child had established emotional ties creating a parent and child relationship; and
>
> (3) visitation rights would not interfere with the relationship between the custodial parent and the child.
>
> The court shall consider the reasonable preference of the child, if the court considers the child to be of sufficient age to express a preference.

Minn.Stat. § 257C.08, subd. 4.

■■■ Neither of these provisions, by their plain language, allows a court to award visitation to Rohmiller over the objections of Hart. She is neither a parent nor grandparent of B.H.'s mother and therefore does not satisfy subdivision 1. And subdivision 4 is not satisfied because Rohmiller did not show that she had established emotional ties creating a parent-child relationship with B.H. and B.H. did not reside with Rohmiller for two years.

Rohmiller argues, however, that we cannot resolve this case based on the plain language of the statute. Specifically, she contends that the statute is ambiguous or,

alternatively, that application of the statute's plain language leads to an absurd result. We consider these arguments in turn.

#### A.

Rohmiller contends that Minn.Stat. § 257C.08 is ambiguous.[4] Her argument for ambiguity is not based on conflicting interpretations of the words used in the statute. Instead, Rohmiller argues that § 257C.08 is ambiguous based on silence. Specifically, Rohmiller argues that subdivision 4 "expressly provides for visitation for a narrow subset of persons who are not parents or grandparents [but] is silent as to whether persons who are not included in that narrow class of people have the ability to petition for visitation." It is this statutory silence that Rohmiller contends makes subdivision 4 ambiguous.

We have recognized that silence does not render a statute ambiguous unless the silence renders the statute susceptible to more than one reasonable interpretation. *In re Welfare of R.S.*, 805 N.W.2d 44, 51 (Minn.2011) (citation omitted). Our task in such a circumstance is to "resolve whether the statutory construction issue . . . involves a failure of expression or an ambiguity of expression." *Premier Bank*, 785 N.W.2d at 760 (citation omitted). We cannot add words or meaning to a statute that were intentionally or inadvertently omitted. *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn.2001). Therefore, "[w]hen a question of statutory construction involves a failure of expression rather than an ambiguity of expression, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *Id.* (citation omitted) (internal quotation marks omitted).

Applying that standard, we have on a few occasions held statutes to be ambiguous when a statute is completely silent on a contested issue. *See MBNA Am. Bank, N.A. v. Comm'r of Revenue*, 694 N.W.2d 778 (Minn.2005); *Burkstrand v. Burkstrand*, 632 N.W.2d 206 (Minn.2001). In *Burkstrand*, the parties disputed the consequences of holding a hearing outside of the time limit specified in Minn.Stat. § 518B.01, subd. 7(c) (2000). 632 N.W.2d at 207. One party argued that the time limit was instructional and the other that it was jurisdictional, the latter of which would require dismissal. *Id.* at 210. We held that the statute was ambiguous because it was completely silent as to the consequences of holding a hearing outside of the time limit and the parties both offered reasonable interpretations. *Id.* Likewise, in *MBNA*, the parties disputed what effect nonconformity with a procedural requirement had. *MBNA*, 694 N.W.2d at 781–82. Because the statute at issue was silent as to the effect of nonconformity, we held that the statute was ambiguous. *Id.* at 782–83.

Unlike in those cases, the relevant statute here, Minn.Stat. § 257C.08, is not completely silent on the contested issue of visitation rights. Rather, the statute specifically identifies the classes of persons who can successfully petition for visitation. Subdivision 1 specifically states which relatives can successfully petition for visitation under it: parents and grandparents of the

---

4. It is unclear from the record what part of Minn.Stat. § 257C.08 Rohmiller contends is ambiguous. Rohmiller's complaint was brought pursuant to the statute as a whole. The district court concluded that Minn.Stat. § 257C.08, subd. 1 was ambiguous, and appears to have granted Rohmiller visitation rights under that subdivision. In Rohmiller's brief, she argues that Minn.Stat. § 257C.08, subd. 4 is ambiguous, but makes no argument as to the ambiguity of subdivision 1.

deceased parent of an unmarried minor child. Minn.Stat. § 257C.08, subd. 1. Subdivision 4 specifically delineates the persons not included in subdivision 1 who can successfully petition for visitation, and aunts, in their status as aunts, are not among them. If the legislature wanted to include aunts as a class of individuals who could petition for visitation, it could have. We "cannot supply that which the legislature purposely omits or inadvertently overlooks." *Wallace v. Comm'r of Taxation*, 289 Minn. 220, 230, 184 N.W.2d 588, 594 (Minn.1971) (citations omitted). In short, Minn.Stat. § 257C.08 is not ambiguous due to legislative silence.[5]

## B.

Rohmiller next urges us to look past the clear and unambiguous plain language of Minn.Stat. § 257C.08 in order to avoid an absurd result. *See* Minn.Stat. § 645.17(1) (2010) (stating that when construing a statute, we must presume that "the legislature does not intend a result that is absurd"). Rohmiller contends that it would be absurd for the legislature to exclude stepparents, step-grandparents, step-siblings, cousins, significant others, and others who had not maintained a parent-child relationship with a child for at least 2 years from gaining visitation to that child because there "is no magic relationship that is formed" after 2 years.

 We are very reluctant to look past the plain language of an unambiguous stat-

ute. *See Toth*, 722 N.W.2d at 441–42. We will do so only when the plain meaning of a statute "utterly confounds a clear legislative purpose." *Id.* at 442 (citing *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 639 (Minn.2006)); *see also Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 827–28 (Minn.2005); *Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust*, 659 N.W.2d 755, 760–62 (Minn.2003); *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 495–96 (Minn.1997).

We considered the legislature's purpose in enacting Minn.Stat. § 257C.08 in *Olson v. Olson*, 534 N.W.2d 547 (Minn.1995). We found that the purpose of the visitation statute, as it was then enacted, was to give grandparents and great-grandparents a legal right to visitation with their grandchildren. *Olson*, 534 N.W.2d at 549–50.[6] This right had to come via statute because "[h]istorically, grandparents had virtually no legal right to maintain a relationship with a grandchild independent of the wishes of the child's parents." *Id.* at 549 (citation omitted); *see* George L. Blum, Annotation, *Grandparents' Visitation Rights where Child's Parents are Deceased, or where Status of Parents is Unspecified*, 69 A.L.R.5th 1, 23 (1999) ("Under common-law principles, it should be noted, grandparents had no legal right to visit and to communicate with their grandchildren if such visitation or communication was forbidden by the parents."). Grandparents, like other non-parents, had rights to visitation under Minnesota com-

---

**5.** Rohmiller argued in her brief that if the statute was ambiguous, the canon of *expressio unius est exclusio alterius* should not be applied to Minn.Stat. § 257C.08. Because we conclude that Minn.Stat. § 257C.08 is not ambiguous, we do not consider this argument.

**6.** The statute has been amended several times since we decided *Olson*. *See* Act of Mar. 27, 2002, ch. 304, § 13, 2002 Minn. Laws 428,

444 (renumbering Minn.Stat. § 257.022 as Minn.Stat. § 257C.08); Act of Feb. 18, 1998, ch. 254, art. 2, §§ 27, 28, 1998 Minn. Laws 114, 166 (removing jurisdiction from county courts); Act of May 19, 1997, ch. 177, §§ 2, 3, 1997 Minn. Laws 1177, 1178–79 (detailing the requirements for grandparent visitation with an adopted child). These amendments do not affect our reliance on the reasoning and conclusions in *Olson*.

mon law only if they were standing, or had stood, in loco parentis to a child. *See generally Simmons v. Simmons,* 486 N.W.2d 788 (Minn.App.1992) (holding that a stepparent who stood in loco parentis may have a common law right to visitation).[7] The legislative purpose in enacting Minn.Stat. § 257C.08 was to provide such a right for grandparents and great-grandparents under the circumstances set forth in the statute.

In essence, Rohmiller argues that because the legislature extended visitation rights to grandparents in Minn.Stat. § 257C.08, it would be an absurd result not to extend visitation rights to other family members even though these family members do not satisfy the plain language of the statute. We disagree. Rohmiller concedes that she is not now, and never has been, in loco parentis with B.H. To the extent the legislative purpose in enacting Minn.Stat. § 257C.08 was to provide visitation rights for family members other than grandparents, the legislature specifically codified the requirement that those persons be in loco parentis with the child. *See SooHoo v. Johnson,* 731 N.W.2d 815, 822 (Minn.2007) (reading the requirement in Minn.Stat. § 257C.08, subd. 4 that the petitioner demonstrate that she has " 'established emotional ties creating a parent and child relationship' ... as mandating that the petitioner stand in loco parentis with the child") (quoting Minn.Stat. § 257C.08, subd. 4). Applying the plain language of the statute not to provide for a right to visitation to an aunt who does not stand in loco parentis with the child therefore does not confound the legislative purpose in enacting Minn.Stat. § 257C.08 or otherwise lead to an absurd result.

■ In sum, we hold that Minn.Stat. § 257C.08 is not ambiguous and that Rohmiller is not entitled to visitation with B.H. under the plain language of the statute.

## II.

We turn next to Rohmiller's argument that the district court had authority to award her visitation outside the confines of Minn.Stat. § 257C.08. Rohmiller argues, in essence, that the court had authority to grant visitation based on case law or pursuant to the equitable powers of the court. We disagree.

## A.

■ Rohmiller argues that she has a right to visitation based in case law. The district court agreed, concluding that Minnesota courts have held "that aunts and uncles have certain rights with respect to visiting their nieces and nephews." In determining that there is a common-law right to visitation by aunts and uncles, the district court relied on our decision in *State ex rel. Burris v. Hiller,* a case predating the enactment of section 257C.08. 258 Minn. 491, 104 N.W.2d 851 (1960). *Burris* involved an award of custody of a minor child after the death of the boy's father and mother in a car accident in which the boy and his half-sisters were injured. *Id.* at 492–93, 104 N.W.2d at 853. At the time of the father's death in *Burris,* the father also had custody of two daughters from his first marriage. *Id.* All three children in *Burris* were discharged from

---

**7.** We have stated that:

> The term 'in loco parentis,' according to its generally accepted common-law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption and embodies the two ideas of assuming the parental status and discharging the parental duties.

*SooHoo,* 731 N.W.2d at 822 (quoting *London Guar. & Accident Co. v. Smith,* 242 Minn. 211, 217, 64 N.W.2d 781, 785 (1954)).

the hospital to the home of the father's brother, who had been appointed their special guardian, and the brother's wife. *Id.* at 493, 104 N.W.2d at 853. The father's first wife sought and was awarded custody of her daughters pursuant to a stipulation, a portion of which provided that mother would not hinder the aunt and uncle's "normal privilege as uncle and aunt to visit the girls and the girls to visit them[.]" *Id.* at 493, 104 N.W.2d at 853.

The district court in this case considered *Burris* to stand for the proposition "that aunts and uncles have certain rights with respect to visiting their nieces and nephews." We disagree for several reasons. First, the custody of the two girls in *Burris* was resolved by stipulation, making our discussion of the terms of the girls' custody in the context of the dispute over custody of the girls' half-brother dicta. Second, our reference to the "normal privilege as uncle and aunt" of visitation was no more than a recitation of the terms of the parties' stipulation, and cannot be read to either create such a right or to acknowledge the existence of such a right. *Id.* Finally, because the status of the two girls was resolved by stipulation between the girls' mother and their aunt and uncle, *Burris* does not address the issue here: the right to visitation over the objections of the parent. *Burris* therefore does not provide support for Rohmiller's contention that she has a right to visitation.

Rohmiller also relies on *Simmons,* a court of appeals case, for the proposition that Minn.Stat. § 257C.08 does not preclude a court from using its equitable powers to award extra-statutory visitation. 486 N.W.2d 788. In *Simmons,* a former stepparent petitioned for visitation rights under Minn.Stat. § 257.022, subd. 2b

(1990) (renumbered Minn.Stat. § 257C.08, subd. 4 (2002)). 486 N.W.2d at 790. The former stepparent did not have a statutory right to visitation under Minn.Stat. § 257.022 because he had not lived with the child for 2 years. *Id.* The court, however, held that the statute did not "preclude a former stepparent who was *in loco parentis to the child from asserting a common-law right to visitation,* and ... [the custodial parent] stipulated to the visitation." *Id.* (emphasis added). The court concluded that Minnesota recognized the common law doctrine of in loco parentis, and that, because the statute did not specifically repeal, restrict, or abridge the doctrine, Minn.Stat. § 257.022 extended and supplemented the common law. *Id.* at 791.

Based on *Simmons,* Rohmiller argues that the common law doctrine of in loco parentis is an exception to Minn.Stat. § 257C.08, subd. 4, and reasons that if a court can award someone in loco parentis extra-statutory visitation, a court could grant her extra-statutory visitation using its powers as parens patriae, in the best interests of B.H. But Rohmiller concedes that she never stood in loco parentis with B.H., so *Simmons* provides no support for her argument for visitation.

 Rohmiller cites no other Minnesota case law to support her right to visitation, and we have not found any reported Minnesota cases in which, over a fit custodial parent's objection, visitation was awarded to a non-parent who was not standing in loco parentis with the child. Rather, under the common law in Minnesota, a finding of in loco parentis status has been essential to the granting of visitation to non-parents over the objection of a fit parent.[8] Because Rohmiller never

---

**8.** In *Geibe v. Geibe,* a stepmother whose relationship with her stepchildren was through the children's deceased, noncustodial father, petitioned for visitation. *Geibe v. Geibe,* 571

stood in loco parentis with B.H., and in the face of Hart's objection, we hold that Rohmiller has no right under the common law to visitation with B.H.[9]

## B.

■ Finally, we turn to Rohmiller's argument that the district court, sitting as a court of equity, properly exercised its role as parens patriae in matters concerning children to grant her visitation with B.H. over the objections of B.H.'s father. Rohmiller first notes that the district court supported its determination that Rohmiller and Clayton be awarded visitation rights with B.H. with numerous detailed findings of fact. We do not disagree with Rohmiller that the court's conclusion that it would be in B.H.'s best interest for B.H. to maintain contact with her mother's family through visitation with Clayton finds support in the record. That is not the question presented for our review. Rather, the question is whether the court had authority to order visitation with Rohmiller independent of B.H.'s visitation with Clayton and over the objection of B.H.'s father. Based on our review of the record, we conclude that the court lacked this authority.

There is no question in this case that Hart has been determined to be a fit parent and that he objects to Rohmiller's visitation with B.H. independent of visitation by Clayton. Rohmiller acknowledges that a fit parent's right to make decisions concerning the care, custody, and control of his or her children is a fundamental right protected by the federal and Minnesota constitutions. See *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion); *SooHoo*, 731 N.W.2d at 820. We need not decide in this case whether the district court has the equitable authority to award visitation to a petitioner who has never stood in loco parentis with the child over the objection of a fit parent because Rohmiller concedes that any such order would be subject to the United States Supreme Court's analy-

---

N.W.2d 774, 780 (Minn.App.1997). Although there was significant evidence pointing to the closeness of the stepmother to the children (e.g., the children called her "Mom"), the district court found that she was not standing in loco parentis. *Id.* at 776, 780–81. The court then concluded that "stepparents whose only relationship with the children is through visitation" cannot be in loco parentis and cannot be awarded visitation. *Id.* at 781. In *Weiler v. Lutz*, the court of appeals held that when there is no common law right to visitation a party must show that a statute creates a visitation right. *Weiler v. Lutz*, 501 N.W.2d 667, 672 (Minn.App.1993) (citation omitted). The court also stated that "nonparental third parties are entitled to visitation only under clearly defined circumstances." *Id.*

9. Rohmiller cites several cases from other jurisdictions for the proposition that courts regularly grant third-party visitation to those who have no statutory right to it. These cases are unpersuasive. All of the cases were decided before the Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (discussing the limited situations in which granting a nonparent visitation would not offend a custodial parent's due process rights), grant visitation to someone standing in loco parentis, or are simply inapposite. See *Youmans v. Ramos*, 429 Mass. 774, 711 N.E.2d 165 (1999) (granting non-statutory visitation to an aunt who had created a mother-daughter relationship with the child in question); *V.C. v. M.J.B.*, 163 N.J. 200, 748 A.2d 539 (2000) (holding that former domestic partner who was child's "psychological parent" could be granted visitation rights); *In re the Adoption of Francisco A.*, 116 N.M. 708, 866 P.2d 1175 (N.M.Ct.App. 1993) (holding that, in theory, third parties could be awarded visitation rights, but denying visitation to a former foster parent over adoptive parents' objections); *In re Custody of H.S.H.-K.*, 193 Wis.2d 649, 533 N.W.2d 419 (1995) (finding that former partner with no statutory right to visitation could be granted visitation because she had a parent-like relationship with a child).

sis in *Troxel,* and as set forth below, the district court's order providing Rohmiller with visitation independent of Clayton's visitation cannot be sustained under that analysis.

In *Troxel,* the Supreme Court discussed the relationship between a parent's fundamental right to raise his or her children and third-party visitation statutes. 530 U.S. at 67–73, 120 S.Ct. 2054. The Court held unconstitutional a Washington statute granting "any person" standing to petition for visitation at "any time" so long as visitation was in the best interests of the child. *Id.* at 61, 73, 120 S.Ct. 2054. The Court based its decision on the "sweeping breadth" of the Washington statute but specifically declined to consider whether any non-parent visitation statute could be constitutional or to define the precise standards that would allow a visitation statute to pass constitutional muster. *Id.* at 73, 120 S.Ct. 2054.

In *SooHoo,* we read *Troxel* to require that a third-party visitation statute adhere to three guiding principles in order to be constitutional. *SooHoo,* 731 N.W.2d at 820. First, "the statute must give some special weight to the fit custodial parent's decision regarding visitation." *Id.* at 821. Second, "there can be no presumption in favor of awarding visitation." *Id.* Third, "the court must assert more than a mere best-interest analysis in support of its decision to override the fit parent's wishes." *Id.*

Rohmiller acknowledges that the principles from *Troxel* that we applied in *SooHoo* to Minn.Stat. § 257C.08 govern the district court's decision to grant her petition for visitation. Based on Rohmiller's concession, we assume, but do not decide, that the analysis we applied in *SooHoo* to the statute also governs the district court's decision to grant extra-statutory visitation to a petitioner such as Rohmiller, who has

never stood in loco parentis with the child but seeks visitation over the objection of a fit parent. We conclude Rohmiller is not entitled to visitation under that standard.

We need look no further than the third principle. Under the third principle from *Troxel* and *SooHoo,* the district court was required to apply more than a mere "best interests" analysis to overcome Hart's visitation determination. *SooHoo,* 731 N.W.2d at 821. The district court found that visitation with Rohmiller and Clayton was in B.H.'s best interests because B.H. would likely suffer emotional harm if ties to the maternal family were severed. Therefore, it appears that the court used more than a "best interests" analysis to decide that visitation with the *maternal family* was warranted.

But Hart is not contesting visitation with the maternal family; he is contesting only visitation between B.H. and Rohmiller independent of visitation with Clayton. The district court made no findings that B.H. would suffer emotional damage if she was not allowed to visit with Rohmiller, or any other member of the Rohmiller family, independent of visitation with Clayton. Nor do the court's findings indicate that it applied anything more than a mere "best interests" analysis in determining that Rohmiller was entitled to visitation independent of Clayton's visitation. The court's conclusion with respect to Rohmiller's visitation was simply that "[v]isitation between ... Kelli [Rohmiller] and the child is in the child's best interest and will not interfere with the parent-child relationship of [Hart] and the child." In order to overcome the wishes of a fit parent, however, *SooHoo* requires more than a best interests analysis. *See SooHoo,* 731 N.W.2d at 821.

Because the district court made no findings to suggest that it used more than a mere "best interests" analysis in deciding

to allow Rohmiller to exercise visitation independent from Clayton, we hold that the court erred. This opinion should not be read, however, to prevent Rohmiller from seeing B.H. while B.H. is visiting Clayton.

Affirmed.[10]

---

10. Hart's motion to strike portions of petitioner's reply brief and appendix pursuant to Minn. R. Civ.App. P. 110.01 is granted. *See* Resp. Mot. Strike, Aug. 24, 2011. A review of the record reveals that the material in the appendix relied on in the reply brief was not part of the record below and therefore is not a part of the appellate record.