*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1656**

In re the Matter of: A. B.
Wayne Belisle, et al., petitioners,
Respondents,

vs.

Yana Verzhbitskaya,
Appellant.

**Filed June 15, 2015
Affirmed as modified
Hooten, Judge**

Washington County District Court
File No. 82-FA-14-1139

Elizabeth C. Henry, Gary K. Luloff, Chestnut Cambronne, PA, Minneapolis, Minnesota (for respondents)

Eric Johnson, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Hudson, Judge; and Klaphake, Judge.*

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this grandparent-visitation dispute, appellant-mother argues that: (1) the district court abused its discretion by finding that visitation between her child and respondent-

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

grandparents would not interfere with appellant-mother's parent-child relationship; (2) the district court failed to make adequate findings of fact to support the grandparent-visitation schedule; (3) the amount of visitation awarded to respondent-grandparents is excessive; and (4) the award of visitation impermissibly includes an award of visitation to persons other than grandparents. We affirm as modified.

## FACTS

A.B. was born to appellant Yana Verzhbitskaya and Timothy Belisle in December 2002. Appellant and Timothy Belisle were married at that time and divorced in 2006. Appellant was granted sole physical and sole legal custody of A.B. after the divorce, and Timothy retained parenting time, which included alternating weekends and Wednesday overnights. Timothy passed away in November 2013.

Respondents Wayne and Janet Belisle are Timothy's parents and A.B.'s paternal grandparents. In March 2014, they filed a petition seeking grandparent visitation with A.B., as they claimed that appellant had prevented them from seeing A.B. since Timothy's death. Appellant opposed this petition, requesting that the district court deny visitation to respondents or, in the alternative, order respondents to "provide reasonable financial support" for A.B. if visitation was awarded. At the initial case-management conference, the district court ordered the parties to attend mediation and later appointed a mediator by order. The record does not show whether any mediation actually took place at this time, as the district court then proceeded to hold an evidentiary hearing in June 2014. The parties and several other members of the Belisle family testified at the evidentiary hearing.

2

Both respondents testified about their relationship with A.B. Janet Belisle testified that, in accordance with their son's parenting-time schedule, they had typically spent time with A.B. every other weekend during the summer and at least one weekend a month during the school year. A.B. would also be with them for major holidays such as Thanksgiving and Christmas Eve. Wayne Belisle testified that because he attended several of A.B.'s sporting events and gave A.B. a ride to and from the games, he would see A.B. more often than his wife. Both testified that Timothy Belisle allowed his parents to spend time with A.B. during his parenting time with the child. Janet noted that she was respectful of appellant in front of A.B., and both said that they did not encourage A.B. to lie to appellant about anything. Appellant, on the other hand, claimed to have "no relationship" with respondents, and only saw them occasionally at parenting time exchanges. She testified that she and Timothy had an "unfriendly divorce" and had had difficulty co-parenting A.B before Timothy's death.

Appellant raised concerns about the parties' differing cultural backgrounds and indicated her belief that respondents' values and ideas about how to raise A.B. differed from her own. Appellant was born in Russia and testified that she intended to raise A.B. in the Russian Orthodox religion. She stressed her belief that "a person needs to have one religion" and expressed concern that respondents would be taking A.B. to Catholic services and having him celebrate Catholic holidays. In response to appellant's concerns, Janet Belisle testified that she knew that appellant was raising A.B. in accordance with appellant's Russian cultural background and religion. Although she acknowledged that she had taken A.B. to Catholic services when Timothy was still alive, she disclaimed any

intent to interfere with appellant's desire to raise A.B. in the Russian Orthodox religion and stated that she would not bring A.B. to Catholic church services if appellant did not want her to do so.

Appellant also complained that respondents interfered with her parent-child relationship when, on several occasions, they visited A.B. during his lunch hour at school without her knowledge or permission. However, respondents claimed that, after Timothy's death, the school counselor expressed concerns for A.B.'s emotional well-being and requested that respondents and other Belisle relatives visit with A.B. at school during his lunch hour. As further evidence of respondents' alleged interference, appellant also testified about a verbal confrontation that occurred between Wayne Belisle and herself about the distribution of Timothy's estate, which took place while she was assisting A.B. in retrieving his possessions from Timothy's house. Appellant claimed that this dispute between her and respondents involving her potential interest in Timothy's estate remained unresolved at the time of the hearing. Appellant did not explain how these financial disputes regarding the probate of Timothy's estate interfered with her parent-child relationship with A.B.

In a July 11, 2014 order and judgment, the district court found by clear and convincing evidence that, because respondents had spent "substantial time" with A.B. after his parents divorced, grandparent visitation was in A.B.'s best interests and would not interfere with appellant's parent-child relationship. Accordingly, the district court granted respondents' request for grandparent visitation and ordered the parties to attend mediation regarding the visitation schedule.

Appellant refused to attend the scheduled mediation session. In his report, the mediator described his phone call to appellant's counsel on the morning of mediation, in which counsel "was vague as to whether or not he or his client would appear." The mediator then received a phone call from appellant, who "made a number of inappropriate statements" and began to argue her position. When the mediator responded that appellant should present her proposals at mediation, "[appellant] stated she would not appear at the mediation and hung up the telephone." In appellant's absence, the mediator met with respondents and considered their proposed visitation schedule, as well as the mediator's best estimate of what appellant's proposed visitation schedule would have been. The mediator ultimately recommended that respondents receive one weekend visit and one overnight Wednesday visit per month, a nine-day visit during summer vacation, and visitation on Thanksgiving and Christmas Eve. He also recommended that respondents be able to attend all of A.B.'s school functions and, along with other relatives, be able to visit A.B. at school once per week.

The district court adopted these recommendations in full in an August 11, 2014 order. Appellant moved to revise the order, arguing that she never agreed that the mediator's recommendations would be binding and that this visitation schedule was excessive and interfered with her parenting rights. Respondents soon brought a motion for civil contempt, alleging that appellant had failed to allow respondents their weekend visitation time with A.B. After a hearing on these motions, the district court awarded compensatory visitation to respondents and affirmed the visitation schedule, finding that

the schedule "is not excessive given the nature and quality of time the child has spent with [respondents] in the past." This appeal followed.

**D E C I S I O N**

The district court awarded grandparent visitation to respondents under Minn. Stat. § 257C.08, subd. 1 (2014), which provides:

> If a parent of an unmarried minor child is deceased, the parents and grandparents of the deceased parent may be granted reasonable visitation rights to the unmarried minor child during minority by the district court upon finding that visitation rights would be in the best interests of the child and would not interfere with the parent child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

Appellant challenges the district court's grandparent-visitation decisions. "The district court enjoys broad discretion in determining visitation," and we will not reverse absent an abuse of that discretion. *SooHoo v. Johnson*, 731 N.W.2d 815, 825 (Minn. 2007). We examine whether the district court made findings unsupported by the record or improperly applied the law. *See id.* A finding is clearly erroneous when "the reviewing court is left with the definite and firm conviction that a mistake has been made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000) (quotation omitted). "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Id.* at 474.

**I.**

Appellant concedes that the district court's decision was in the best interests of A.B. and focuses her first argument on the district court's determination that respondents

6

proved by clear and convincing evidence that visitation would not interfere with the parent-child relationship. Appellant correctly notes that respondents carried the burden of proving non-interference. In light of a parent's protected fundamental right "to make decisions concerning the care, custody, and control of his or her children," *SooHoo*, 731 N.W.2d at 820 (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000)), grandparents "must prove by clear and convincing evidence that visitation would not interfere with the parent-child relationship" in order to be awarded visitation, *In re C.D.G.D.*, 800 N.W.2d 652, 656 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011).

Appellant claims that the district court improperly placed the burden of proof on her to affirmatively show interference. However, the district court's order indicates that it properly acknowledged and applied the correct burden of proof in its decision. It specifically concluded that respondents had shown "by clear and convincing evidence . . . that visitation has not [interfered] and will not interfere with [appellant's] relationship with [A.B.]." In its findings of fact, the district court properly evaluated the evidence produced by respondents that rebutted appellant's proposed instances of interference. While the district court noted that appellant "did not provide any credible evidence" as to interference, its findings indicate that the district court reached this determination by weighing appellant's proposed instances of interference against respondents' testimony as to how they would minimize interference in those circumstances.

Appellant further alleges that the evidence in this case does not support the district court's findings regarding non-interference. But, appellant has failed to show how these

7

findings are erroneous, or why these findings fail to support the district court's conclusion that grandparent visitation would not interfere with appellant's parental relationship with A.B. For every concern raised by appellant regarding how respondents may interfere with her parenting, the district court found that respondents credibly showed how they would refrain from interfering. While appellant selectively chooses portions of the record that she believes to be inconsistent with these findings, she fails to show that the district court's findings lack record support. Much of appellant's argument regarding respondents' alleged interference relies on testimony that the district court found to lack credibility, and we defer to the district court's credibility determinations. Minn. R. Civ. P. 52.01. While it is clear that there is an unfriendly relationship between the parties, the record shows that many of appellant's expressed concerns about respondents stem from appellant's financial claims regarding the distribution of Timothy's estate, which do not involve the parties' relationship with A.B. Regarding appellant's concerns about her right to parent A.B., respondents repeatedly expressed a willingness to accommodate these concerns.

On this record, we conclude that the district court did not clearly err by finding clear and convincing evidence of non-interference.

**II.**

Appellant next raises a number of challenges to the district court's August 11 order adopting the mediator's recommended visitation schedule.

Appellant first contends that the district court erred by ordering the parties to mediate regarding a visitation schedule, as she claims that the parties never actually

8

agreed to mediate this issue. The record contradicts this claim. The district court had already appointed the mediator prior to the evidentiary hearing, without timely objection from appellant as provided for in the prehearing order appointing the mediator. The mediator then appeared at the evidentiary hearing and informed the district court that the parties had agreed to have him mediate a visitation schedule if the district court found that respondents were entitled to visitation. Neither party objected to the mediator's claim that the parties had agreed to this procedure at the hearing. Based upon this undisputed testimony, the district court memorialized the parties' agreement in its July 11 order.

Furthermore, contrary to appellant's arguments, the district court did not simply adopt these recommendations as a binding schedule without making findings. The district court's July 11 order provided that any schedule proposed by the mediator, if the parties were unable to reach an agreed-upon schedule, would be binding "on the date that it is submitted to the parties and the court," and either party would then have 14 days to file a motion with the district court contesting that schedule. In accordance with the district court's order, appellant moved to revise the schedule. The district court considered appellant's arguments and denied appellant's motion, finding that the visitation schedule was not excessive in light of respondents' prior contact with A.B. Contrary to appellant's contentions, the record shows that the district court had already determined that grandparent visitation was warranted, and then independently evaluated the mediator's proposed schedule in light of its familiarity with the case.

9

Appellant further challenges the substance of the visitation schedule, arguing that "[t]here is a limit to the sheer quantum of grandparent visitation" under the statute, and that this visitation schedule exceeded that limit by treating the grandparents like co-parents. Appellant cites *In re C.D.G.D.* in support of this proposition, in which we held that a district court abused its discretion by ordering excessive grandparent visitation that impermissibly interfered with the parent-child relationship. *See* 800 N.W.2d 652, 659–62 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). The district court in *C.D.G.D.* appeared to treat the grandparent like a co-parent and accordingly required the child to "spend some part of 182 days every calendar year" with the grandparent, including 52 overnight visits. *Id.* at 659. This schedule entirely failed to consider holidays, prevented the father from taking his child to religious meetings and other weekend activities, and prohibited the father from taking long trips with the child without the grandparent's permission. *Id.* at 659–60. This schedule was "unprecedented in scale and design" when compared to other grandparent-visitation cases, and we held that this amount of visitation, in light of the circumstances, interfered with the parent-child relationship. *Id.* at 660.

Here, there is no indication in the record that the district court impermissibly treated respondents like co-parents in the amount of visitation it awarded. The visitation schedule imposed by the district court is wholly unlike the visitation schedule in *C.D.G.D.* when viewed in conjunction with the circumstances of this case and other grandparent-visitation caselaw. The district court awarded visitation to respondents of one weekend and one weekday afternoon per month, a once-weekly school visit, a nine-

day summer visit, and daytime visits on Thanksgiving and Christmas Eve. The district court found this schedule to be appropriate in light of the nature and quality of respondents' relationship with A.B., and, on this record, this finding is not clearly erroneous. This schedule awards significantly less time than was previously awarded to Timothy as parenting time and is fully consistent with the amount of contact respondents had with A.B. prior to Timothy's death. The schedule also addresses the religious and cultural concerns raised by appellant, as it specifically forbids respondents from taking A.B. to Catholic services and disallows visitation on the day of Russian Orthodox Christmas, which is celebrated on a different day than Catholic Christmas.

Further, this amount of visitation is not unprecedented in our grandparent-visitation caselaw. In *Rohmiller v. Hart*, this court ruled that a very similar grandparent-visitation schedule was nonexcessive. *See* 799 N.W.2d 612, 614–15 (Minn. App. 2011), *aff'd*, 811 N.W.2d 585 (Minn. 2012). That visitation schedule provided for grandparent visitation of one weekend per month, one week during the summer, and two holiday visits. *Id.* at 614. This court declined to hold that the district court abused its discretion in ordering such a schedule, even though the grandparent in that case had only spent about eight hours per month with the young child prior to her mother's death. *Id.* at 615. The visitation schedule in this case is nearly identical, and the record here shows that respondents spent a much greater quantity of time with A.B. than the grandparent in *Rohmiller* did with his grandchild.

Based on this record, we conclude that the visitation schedule ordered by the district court was not an abuse of discretion.

11

## III.

Lastly, appellant contends that the district court lacked the authority to award visitation for other Belisle family members and to allow certain relatives to pick-up and drop-off A.B. before and after visitation. Appellant provides no authority preventing the district court from allowing other persons to facilitate visitation transfers, and we conclude that this argument is forfeited. *See In re Estate of Rutt*, 824 N.W.2d 641, 648 (Minn. App. 2012) (providing that "an assignment of error based on mere assertion and not supported by any argument or authorities" is forfeited (quotation omitted)), *review denied* (Minn. Jan. 29, 2013).

Appellant's argument that the district court did not have the authority to grant visitation to other relatives is more persuasive. While respondents argue that the district court's August 11 order did not "grant[] separate or independent visitation," the order states that "[g]randparents *and/or relatives* (1/2 sister, aunts, uncles, cousins)" could visit A.B. at school once per week. (Emphasis added.) On its face, the order awards visitation time to Belisle relatives other than respondents. However, visitation awards under Minn. Stat. § 257C.08 (2014) are expressly limited to grandparents or other persons who stand in loco parentis with the child. *See Rohmiller v. Hart*, 811 N.W.2d 585, 591–92 (Minn. 2012) (holding that aunt was not entitled to visitation under section 257C.08). Here, the other relatives contemplated in the district court's order are not grandparents and do not have an in loco parentis relationship with A.B. that would have allowed them to petition for visitation. *See* Minn. Stat. § 257C.08, subd. 4 (allowing reasonable visitation rights to person with whom an unmarried minor has resided for two years or more).

12

We conclude that the district court acted contrary to section 257C.08 to the extent that it awarded visitation rights to individuals other than respondents. We therefore strike the phrase "and/or relatives (1/2 sister, aunts, uncles, cousins)" from the portion of the district court's August 11, 2014 order awarding independent visitation rights to other Belisle relatives, and otherwise affirm.[1]

**Affirmed as modified.**

---

[1] We note, however, that nothing in the award as modified herein prohibits respondents from allowing other relatives to join them in the exercise of their court-ordered visitation with A.B.