*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2070**

In Re the Custody of N.I.O.
Jeremiah R. Peck, petitioner,
Respondent,

vs.

Melanie A. Sauter,
Appellant.

**Filed July 18, 2016
Affirmed
Connolly, Judge**

Polk County District Court
File No. 60-FA-14-2026

Jeremiah R. Peck, Tucson, Arizona (pro se respondent)

Patti J. Jensen, Rachel C. Prudhomme, Galstad, Jensen & McCann, P.A., East Grand Forks, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Connolly, Judge; and Muehlberg, Judge.*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

In this grandparent visitation dispute, appellant-mother argues that respondent-father failed to show that grandparent visitation is in the child's best interests; respondent did not show that grandparent visitation would not interfere with the mother-child relationship; and the district court should not have granted visitation to nonintervening grandparents. We affirm.

## FACTS

In 2004, respondent Jeremiah Peck moved from Grand Forks, North Dakota to Tucson, Arizona where he currently resides. His parents, R.P. and C.P. (respondent's parents), still live in Grand Forks, North Dakota. Appellant Melanie Sauter and respondent had a romantic relationship prior to the birth of their child, N.I.O., who was born in 2007. The relationship ended in 2007 shortly after the birth of N.I.O. and appellant subsequently married another man on October 8, 2011. Appellant currently resides with the child in East Grand Forks, Minnesota. Respondent's parents reside approximately five miles from appellant. It is estimated that respondent's parents saw N.I.O. approximately 60 times between N.I.O.'s birth and July 2012.

In July 2012, appellant became upset with respondent's parents when they showed N.I.O. a picture of respondent and told him that it was a picture of his father. Appellant testified that her problems with the grandparents were (1) that they told N.I.O. that respondent was his father without her consent and (2) that respondent's parents told appellant that they should get visitation with N.I.O. on Father's Day because they are the

paternal grandparents. Appellant told respondent's parents that she did not want them to see N.I.O. and completely cut off contact between them and the child.

On November 3, 2014, respondent filed a petition to establish custody and parenting time with the district court. He requested that his parents be given visitation time with N.I.O. At the district court hearing on August 13, 2015, appellant testified that she had no problem with visitation with the grandparents as long as they support the current family unit. When the district court judge asked "I understand from your testimony that you do agree that it's important for [N.I.O.] to have a relationship with his grandparents. Is that correct?" appellant responded "Yes." Appellant thought a schedule of every three months would be sufficient to give respondent's parents time to develop a relationship with N.I.O. The district court granted respondent's parents visitation with N.I.O. once a month on either a Saturday or Sunday between 10:30 a.m. and 7:00 p.m. beginning in January 2016.

## D E C I S I O N

We review visitation orders for an abuse of discretion. *SooHoo v. Johnson*, 731 N.W.2d 815, 825 (Minn. 2007). When reviewing visitation orders, "we must determine whether the court made findings unsupported by the evidence or improperly applied the law." *Id.* We will not set aside the district court's findings unless they are clearly erroneous. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999). "A finding is clearly erroneous if we are left with the definite and firm conviction that the court made a mistake." *SooHoo*, 731 N.W.2d at 825. We do not disturb findings that are supported by reasonable evidence. *Fletcher*, 589 N.W.2d at 101. In grandparent-visitation

3

cases, the district court does not have to make the same detailed analysis as is required in custody determinations. *In re Santoro*, 594 N.W.2d 174, 178 (Minn. 1999).

The district court granted visitation rights to respondent's parents under Minn. Stat. § 257C.08, subd. 2 (2014), which states

> the [district] court may, upon the request of the parent or grandparent of a party, grant reasonable visitation rights to the unmarried minor child . . . if it finds that: (1) visitation rights would be in the best interests of the child; and (2) such visitation would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

Appellant argues that the district court abused its discretion in determining that grandparent visitation is in the best interest of N.I.O. and that it abused its discretion in determining that the visitation would not interfere with the parent-child relationship.[1]

## I. Did the district court err in finding that grandparent visitation is in the best interest of the child?

In determining whether grandparent visitation is in the best interest of the child, the court must consider the personal contact between grandparents and grandchild. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). "The [district] court has broad discretion to

---

[1] Appellant also argues that the district court erred in granting grandparent visitation to respondent's parents when respondent's parents did not intervene in the proceeding. A reviewing court generally considers only those issues that the record shows were presented to, and considered by, the district court in deciding the matter before it. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). "Nor may a party obtain review by raising the same general issue litigated below but under a different theory." *Id.* There is no evidence that appellant challenged respondent's request that his parents be awarded grandparent visitation on the ground that the grandparents did not intervene as parties in the proceeding below. As a result, this issue is not properly before the court, and we decline to address it.

determine what is in the best interests of the child in the area of visitation and its determination will not be overturned absent an abuse of discretion." *Id.* In this case, the district court determined that respondent's parents had frequent contact with N.I.O. following his birth; they developed a close and loving relationship with him beginning with a visit to the hospital soon after he was born; they saw him one to two times a month and talked to him on the telephone; they attended his birthday parties; and, on occasion, provided daycare for him. The district court credited testimony that between the birth of N.I.O. and July 2012, respondent's parents saw N.I.O. approximately 60 times. The district court concluded that visitation between N.I.O. and respondent's parents would be in N.I.O.'s best interest because of respondent's parents' desire to have a relationship with N.I.O., their involvement in the first four years of his life, and appellant's belief that N.I.O. should have a relationship with them.

Appellant, citing *In re Santoro*, argues that because previous contacts between respondent's parents and N.I.O. were primarily during N.I.O.'s infancy, infrequent and short, and because, according to appellant, respondent's parents voluntarily ended their grandparent relationship with N.I.O. in 2012, there is no proof of a present bond nor attachment of N.I.O. to his paternal grandparents. The district court determined that the reason that respondent's parents did not to reach out and contact N.I.O. was due to appellant's request that they do not do so. Despite appellant's allegations, no written correspondence exists in the record of respondent's parents voluntarily ending their grandparent relationship with N.I.O. in 2012. The correspondence appellant referenced merely requests that some items for infants, no longer needed by N.I.O., be returned. We

5

conclude that the act of requesting items back that were not in use does not make the district court's decision that respondent's parents still wanted to have a relationship with the child clearly erroneous.

Moreover, appellant fails to address her comments to the district court that she thinks that "frequent consistent visits in conjunction with [respondent's] visits and also communication with [N.I.O.]" would be in the best interests of the child. In response to the question "So you would allow visitation of grandparents with consistency based upon [respondent's] consistency in his life?" appellant responded "[C]onsistency for [respondent], and as for [respondent's] parents, I don't think they need to – yes, consistency wouldn't hurt him but it doesn't have to be more than once every three months. What grandparent sees their kid – their grandkids every month?" Appellant makes no argument for why it is in the child's best interest to have a relationship with respondent's parents once every three months, but not in the child's best interest to see respondent's parents every month. We conclude that the district court's grant of grandparent visitation once a month is in the best interest of the child and is not an abuse of discretion.

II.     **Did the district court err in concluding that grandparent visitation would not interfere with appellant's parent-child relationship?**

Appellant argues that the district court erred in concluding that grandparent visitation would not interfere with appellant's parent-child relationship. The district court concluded that "there is no evidence that visitation between [respondent's] parents and [N.I.O.] once per month as provided in this order would interfere with [appellant's] parent-child relationship with [N.I.O.]." Appellant argued to the district court that the parent-

6

child relationship would be interfered with because respondent's parents would cause confusion by inappropriately encouraging N.I.O.'s involvement with his father and concealing respondent's voluntary absence. Additionally, appellant argued that it would interfere with the parent-child relationship because respondent's parents had undermined her husband's role as step-father and the importance of her family unit to the minor child. Appellant argues that the district court was required to make specific findings to support a decision overriding appellant's wishes, which it did not.

A parent has the fundamental right to make parenting decisions, including deciding who spends time with the child. That right has long been recognized in the common law and is constitutionally protected. *See Olson*, 534 N.W.2d at 549 (citing common-law precedent and observing that "[h]istorically, grandparents had virtually no legal right to maintain a relationship with a grandchild independent of the wishes of the child's parents"). The United States Supreme Court has held that the due-process clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions as to care, custody, and control of their children. *SooHoo*, 731 N.W.2d at 820. Our supreme court has required that a third-party visitation statute is required to adhere to three guiding principles in order to be constitutional. *Rohmiller v. Hart*, 811 N.W.2d 585, 595 (Minn. 2012). "[T]he statute must give some special weight to the fit custodial parent's decision regarding visitation. Second, there can be no presumption in favor of awarding visitation. Third, the court must assert more than a mere best-interest analysis in support of its decision to override the fit parent's wishes." *Id.* (citations omitted).

In this case, the issue is whether the district court asserted only a best-interest analysis in support of its decision to override appellant's wishes regarding visitation. In *Rohmiller*, a case in which an aunt sought a visitation order, our supreme court determined that the district court only applied a best-interest analysis and therefore erred. *Id.* at 595-96. In that case, the district court stated "[v]isitation between . . . [the aunt] and the child is in the child's best interest and will not interfere with the parent-child relationship of [the mother] and the child." *Id*. at 595. The supreme court determined that this was merely a best-interest analysis. *Id.* However, in this case, the court did more than issue a conclusory statement that there will be no interference with the parent-child relationship, but rather stated that "[t]here is no evidence that visitation between [respondent's] parents and [N.I.O.] once per month . . . would interfere with [the] parent-child relationship." This analysis of the record, in addition to appellant's agreement that some form of visitation with the child is appropriate, is sufficient to conclude that the district court did not clearly err in finding that there would be no interference with the parent-child relationship.

We conclude that the reasons stated in appellant's brief regarding interference with the parent-child relationship, *i.e.*, confusion of the child by disclosures of parentage, facilitation of contact with the father, and undermining her husband's role as a step-father and the importance of her family unit to N.I.O., exist regardless of whether visitation is once every three months or whether visitation is every month. The claim that visitation on a three-month basis does not interfere with a parent-child relationship but a monthly visitation schedule would interfere with the relationship is not supported by the record. Furthermore, several decisions of this court support an order of visitation for one day each

8

month.  *See Gray v. Hauschildt*, 528 N.W.2d 271, 274 (Minn. App. 1995) (affirming an order for monthly, two-day, single-overnight grandparent visitation); *Foster ex rel. J.B. v. Brooks*, 546 N.W.2d 52, 53-54 (Minn. App. 1996) (affirming the district court's reduction of grandparent visitation to one Sunday each month).  These decisions support our conclusion that the award of visitation rights to respondent's parents once every month as opposed to every three months is not an abuse of discretion.

    **Affirmed.**